UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————— x
ALAN G. STEVENS, Individually and on   :   Civil Action No. 1:10-cv-04481-SHS
Behalf of All Others Similarly Situated,   :
    :   CLASS ACTION
          Plaintiff,   :
    :   MEMORANDUM OF POINTS AND
   vs.   :   AUTHORITIES IN SUPPORT OF
    :   PLAINTIFF'S MOTION FOR AN AWARD
SEMBCORP UTILITIES PTE LTD.,   :   OF ATTORNEYS' FEES AND EXPENSES
    :
          Defendants.   :
    :
———————————————— x

587395_1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................2

III.   PLAINTIFF'S COUNSEL ARE ENTITLED TO AN AWARD OF
       ATTORNEYS' FEES AND EXPENSES.............................................................8

IV.    THE AMOUNT OF FEES REQUESTED IS REASONABLE UNDER THE
       "LODESTAR" APPROACH.............................................................................11

       A.     The Time and Labor Expended by Counsel .........................................11

       B.     A Multiplier of 1.9 to 2.16 ................................................................12

V.     CONCLUSION................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*County of Suffolk v. Long Island Lighting Co.*,
   710 F. Supp. 1477 (E.D.N.Y. 1989) ..............................................................12, 13

*Eisenberg v. Chicago Milwaukee Corp.*,
   No. 9374, 1988 Del. Ch. LEXIS 141
   (Del. Ch. Oct. 25, 1988)..............................................................................10

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
   (S.D.N.Y. Oct. 19, 2005) ..........................................................................12, 15

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) .........................................................................14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953
   (S.D.N.Y. Dec. 23, 2009) .............................................................................15

*In re Netsmart Techs., Inc. S'holders Litig.*,
   924 A.2d 171 (Del. Ch. 2007).................................................................9, 10, 13

*Kopet v. Esquire Realty Co.*,
   523 F.2d 1005 (2d Cir. 1975)......................................................................8, 10

*Koppel v. Wien*,
   743 F.2d 129 (2d Cir. 1984)........................................................................1, 8, 9

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................12

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970)......................................................................................10

*Savoie v. Merchants Bank*,
   84 F.3d 52 (2d Cir. 1996) ...........................................................................2, 8, 11

*Seinfeld v. Robinson*,
   246 A.D.2d 291 (N.Y. App. Div. 1998) ...........................................................1, 8

*Sonesta Int'l Hotels Corp. v. Wellington Assoc.*,
   483 F.2d 247 (2d Cir. 1973)............................................................................10

- ii -

**Page**

*Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*,
No. 03-4578, 2005 U.S. Dist. LEXIS 9705
(E.D. Pa. May 20, 2005) ........................................................................................12

*Tandycrafts, Inc. v. Initio Partners*,
562 A.2d 1162 (Del. 1989) ...................................................................................11

*United States v. Smith*,
155 F.3d 1051 (9th Cir. 1998) ...............................................................................9

*Wis. Inv. Bd. v. Bartlett*,
No. 17727. 2002 Del. Ch. LEXIS 42
(Del. Ch. Apr. 9, 2002), *aff'd*, 808 A.2d 1205 (Del. 2002) ...................................11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78n(e) .................................................................................................................3, 4

## SECONDARY AUTHORITIES

Leubsdorf, *The Contingency Factor in Attorney Fee Awards*,
90 Yale L.J. 473 (1981) ........................................................................................14

Richard Posner, *Economic Analysis of Law*
(4th ed. 1992) .......................................................................................................14

587395_1

## I.      INTRODUCTION

Plaintiff hereby submits this application for an award of attorneys' fees and expenses. This action arose out of the attempts of Sembcorp Utilities Pte Ltd. ("Sembcorp") to complete a tender offer for all of the issued and outstanding shares of Cascal N.V. ("Cascal" or the "Company") without full disclosure of material information in its Schedule TO Tender Offer Statement and Offer to Purchase ("May 21 Statement") filed with the Securities and Exchange Commission ("SEC") (together with any amendments and supplements thereto, the "Tender Offer Statement") in violation of federal securities law.  After plaintiff filed suit, he insisted that Sembcorp disclose material information that was necessary for Cascal's public shareholders to make an informed decision concerning whether or not to tender or otherwise exchange their shares pursuant to Sembcorp's tender offer (the "Tender Offer"), including complete financial information that Sembcorp had in possession regarding Cascal and complete information regarding the outcome of the suit between Cascal and Sembcorp.  As a direct result of plaintiff's efforts, and only after plaintiff brought a motion seeking injunctive relief until Sembcorp disclosed this information, did Sembcorp finally disclose the complete financial projections of Cascal and the transcript of the preliminary injunction hearing in the litigation commenced by Cascal against Sembcorp in Sembcorp's Amendment # 7 to the Schedule TO Tender Offer Statement ("Amendment").

Having succeeded in the goals of the litigation – ensuring that Sembcorp shareholders were able to make a fully informed decision in connection with Sembcorp's tender offer – plaintiff now seeks an award of attorneys' fees commensurate with the benefits provided to the shareholder class. In the Second Circuit, a plaintiff is entitled to payment of his attorneys' fees when he has brought a representative action that confers a "substantial benefit" to a class of shareholders.  *Seinfeld v. Robinson*, 246 A.D.2d 291, 294-95 (N.Y. App. Div. 1998); *Koppel v. Wien*, 743 F.2d 129 (2d Cir.

1984).[1]  Moreover, in the Second Circuit, a plaintiff may recover fees even if defendants took actions which rendered the underlying action moot and the plaintiff need not first prove that the complaint had sufficient merit to survive a motion to dismiss.  *Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996).  A fee award is appropriate so long as counsel's causation of the benefit can be sufficiently established.  *Id.* at 56.  Plaintiff respectfully requests that the Court award attorneys' fees and expenses in the amount the Court deems appropriate within the range of $180,000-$200,000, on behalf of counsel for plaintiff because plaintiff's representative action directly caused defendants to make the additional disclosures in the Amendment.

## II.    BACKGROUND

Cascal is a New York Stock Exchange ("NYSE") listed company that is the leading provider of water and wastewater services to customers in eight countries.  While other companies have suffered during the recent global financial crisis, Cascal has performed extraordinary well and its value as an acquisition target was clear.  On March 1, 2010, Sembcorp, who had previously been negotiating the purchase of just the 58.5% stake in Cascal held by its majority shareholder, Biwater Investments Ltd. ("Biwater"), informed Cascal that it was making a tender offer to acquire all of the Company's issued and outstanding shares at a price somewhere in the range of $6.50 to $7.00 per share.  Cascal rejected Sembcorp's offer.

On or about May 21, 2010, Sembcorp filed the May 21 Statement with the SEC containing the terms of the Tender Offer and commenced the Tender Offer for all of the issued and outstanding shares of Cascal for $6.75 per share.  In the May 21 Statement, Sembcorp disclosed a summary of

---

[1]         Unless otherwise noted, emphasis is added and all citations and footnotes are omitted.

"certain non-public financial projections prepared by the Company's management [that] were made available to us in late 2009."  The summary was as follows:

### Financial Projections – Income Statement

| YE March (US$m) | 2009 Actual | 2010 Forecast | 2011 Forecast | 2012 Forecast | 2013 Forecast |
|---|---|---|---|---|---|
| Total turnover | 163.4 | 173.1 | 189.7 | 202.8 | 213.6 |
| Total operating expenses | (104.3 ) | (113.1 ) | (121.1 ) | (127.1 ) | (131.5 ) |
| EBITDA | 59.1 | 59.9 | 68.6 | 75.7 | 82.1 |
| EBIT | 36.8 | 35.5 | 40.1 | 45.1 | 51.6 |
| Profit before tax | 33.1 | 27.3 | 27.9 | 32.8 | 40.0 |
| Net profit | 17.8 | 22.1 | 18.9 | 22.4 | 27.3 |

Also in the May 21 Statement, Sembcorp described the result of the action filed by Cascal against Sembcorp, *Cascal N. V. v. Sembcorp Utilities Pte Ltd. et al.*, 10 Civ. 3613 (LAK) (the "Cascal Litigation") as follows:

> On May 19, 2010, after considering all of the evidence presented by the parties, including the sworn declarations of key individuals, Judge Kaplan concluded, among other things, that based on the record before the court there was no likelihood of the Company succeeding on its legal claims. The court then denied the Company's motion for a preliminary injunction and ***cleared the way for the Offer to go forward***.

Plaintiff filed this action on June 9, 2010, on  behalf of the holders of the common stock of Cascal against Sembcorp arising out of its violations of §14(e) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78n(e), in connection with the May 21 Statement.  Plaintiff alleged that Sembcorp made numerous material misstatements and/or omissions in the May 21 Statement to ensure that Cascal shareholders would not resist Sembcorp's Tender Offer. Specifically, plaintiff alleged that the summary of the financial projections disclosed by Sembcorp in the May 21 Statement was materially misleading in that it was the "sole financial information

- 3 -

disclosed to Cascal shareholders" but was incomplete.  ¶¶48-52.[2]  Plaintiff also alleged that the description of the Cascal Litigation was materially misleading in that it suggested that the Court determined the substantive fairness of the terms of the Tender Offer when in fact the Court had "acknowledged that shareholders may have their own legal remedy."  ¶¶40-44.

Plaintiff began negotiating expedited discovery with defendant on or around June 10, 2010. Because the Tender Offer was set to expire on June 21, 2010, on or around June 17, 2010, plaintiff filed a motion for temporary restraining order and a motion for expedited discovery and for setting a hearing on plaintiff's motion for preliminary injunction.  In the motion for temporary restraining order, plaintiff sought an order from the Court temporarily restraining the consummation of the Tender Offer until the Court could decide whether Sembcorp was required to make further disclosures under the federal securities law, and until all required disclosures are made.  Plaintiff argued that an order was warranted because Sembcorp knowingly and/or recklessly failed to disclose information that Cascal's shareholders would view as important to know before tendering their shares in the Tender Offer, specifically, complete financial information and complete information about the Court's decision in the Cascal Litigation.  *See* Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order ("TRO Motion") at 8.

Sembcorp opposed plaintiff's motion and filed certain documents in support of its opposition.  Among other things, the documents contained an Exhibit 8 to the declaration of one of Sembcorp's attorneys, Anthony M. Candido, which was entitled "Project Atlantis November 2009." This document contained confidential financial and other information about Cascal that was

---

[2]    All "¶" references are to Plaintiff's Complaint for Violation of §14(e) of the Securities Exchange Act of 1934 ("Complaint"), filed June 7, 2010.

provided to Sembcorp by Biwater, and which had not previously been made public.  Specifically, the

document contained detailed financial projections for all segments of Cascal's business, as well as a

detailed discussion of those segments, including the following:

## Income statement

| YE March (US$m) | 2009 Actual | 2010 Forecast | 2011 Forecast | 2012 Forecast | 2013 Forecast |
|---|---|---|---|---|---|
| Total turnover | 163.4 | 173.1 | 189.7 | 202.8 | 213.6 |
| Raw, auxiliary materials, other costs | (42.0) | (46.1) | (49.6) | (52.7) | (54.5) |
| Staff costs | (33.7) | (38.4) | (40.9) | (44.0) | (44.1) |
| Other operating charges | (28.6) | (28.6) | (30.5) | (31.4) | (32.8) |
| Total operating expenses | (104.3) | (113.1) | (121.1) | (127.1) | (131.5) |
| EBITDA | 59.1 | 59.9 | 68.6 | 75.4 | 82.1 |
| Margin % | 36.1% | 34.6% | 36.2% | 37.3% | 38.4% |
| Depreciation and amortisation | (23.0) | (25.8) | (29.1) | (30.7) | (30.5) |
| Gain / loss on disposal of fixed assets | 0.7 | 1.4 | 0.5 | - | - |
| EBIT | 36.8 | 35.5 | 40.1 | 45.1 | 51.6 |
| Margin % | 22.5% | 20.5% | 21.1% | 22.2% | 24.2% |
| Gain / loss on disposal of subsidiaries | (0.1) | 0.2 | - | - | - |
| Net interest expense | (13.6) | (9.2) | (12.2) | (12.2) | (11.6) |
| Foreign exchange differences | 10.0 | 0.7 | - | (0.1) | (0.1) |
| Profit before tax | 33.1 | 27.3 | 27.9 | 32.8 | 40.0 |
| Tax | (14.3) | (5.0) | (9.0) | (9.8) | (11.6) |
| Effective rate % | 43.1% | 18.4% | 32.4% | 30.0% | 29.0% |
| Non-controlling interest | (1.0) | (0.2) | - | (0.6) | (1.1) |
| Net profit | 17.8 | 22.1 | 18.9 | 22.4 | 27.3 |

## Cash flow statement

| YE March (US$m) | 2009 Actual | 2010 Forecast | 2011 Forecast | 2012 Forecast | 2013 Forecast |
|---|---|---|---|---|---|
| Total EBITDA | 59.1 | 59.9 | 68.6 | 75.7 | 82.1 |
| Working capital | (7.4) | 9.1 | (1.0) | (1.8) | (2.0) |
| Provision net movement | (3.2) | (2.9) | (2.0) | (2.5) | (2.5) |
| Capex less disposals | (44.4) | (55.4) | (47.2) | (40.6) | (38.5) |
| Capex contributions | 8.2 | 10.3 | 12.4 | 8.6 | 8.6 |
| Net cash flow | 12.3 | 21.2 | 30.8 | 39.5 | 47.7 |
| Net interest paid | (7.1) | (8.3) | (12.2) | (11.1) | (10.4) |
| Tax paid | (6.8) | (6.4) | (7.6) | (9.0) | (10.8) |
| Free cash flow | (1.6) | 6.5 | 11.0 | 19.4 | 26.5 |
| Acquisitions | (58.3) | - | - | (0.5) | - |
| Disposals | 2.2 | - | - | - | - |
| Cash flow before dividend | (57.6) | 6.5 | 11.0 | 19.0 | 26.5 |
| Shares issued | 2.0 | - | - | - | - |
| Dividends paid by Cascal | (5.5) | (2.8) | (2.8) | (2.8) | (2.8) |
| Dividends paid to minorities | (0.4) | (0.9) | (0.9) | (0.9) | (0.9) |
| FX | 16.3 | (16.3) | (1.2) | - | - |
| Other non-cash movements | (6.0) | 1.7 | (0.6) | (1.4) | (1.4) |
| Net borrowings at beginning of period | (144.9) | (196.2) | (207.9) | (202.3) | (188.4) |
| Net borrowings at end of period | (196.2) | (207.9) | (202.3) | (188.4) | (167.0) |

- 5 -

## Balance sheet

| YE March (US$m) | 2009 Actual | 2010 Forecast | 2011 Forecast | 2012 Forecast | 2013 Forecast |
|---|---|---|---|---|---|
| **Fixed assets** | | | | | |
| Intangible fixed assets | 42.9 | 41.8 | 40.5 | 39.1 | 37.7 |
| Tangible fixed assets | 397.6 | 458.7 | 483.4 | 494.9 | 504.6 |
| Financial fixed assets | 3.9 | 4.5 | 4.5 | 4.5 | 4.6 |
| | 444.3 | 504.9 | 528.4 | 538.6 | 546.9 |
| **Working capital** | | | | | |
| Stocks and work in progress | 5.9 | 6.7 | 7.1 | 7.4 | 7.7 |
| Debtors | 49.0 | 37.6 | 37.8 | 38.6 | 39.7 |
| Current liabilities | (48.8) | (42.1) | (43.5) | (43.6) | (44.3) |
| | 6.1 | 2.2 | 1.4 | 2.4 | 3.1 |
| Deferred income | (51.7) | (66.7) | (77.3) | (83.6) | (89.9) |
| Pensions and other provisions | (10.3) | (10.4) | (9.2) | (7.8) | (6.5) |
| Tax | (37.6) | (41.3) | (42.9) | (43.7) | (44.5) |
| Negative goodwill | (1.2) | (1.2) | (1.1) | (1.1) | (1.0) |
| Net external debt | (196.2) | (207.9) | (202.3) | (188.4) | (167.0) |
| **Net assets** | **153.4** | **179.9** | **196.9** | **216.3** | **241.0** |
| Shareholders' funds | 118.3 | 144.9 | 162.3 | 181.9 | 206.4 |
| Minority interests | 35.1 | 35.0 | 34.7 | 34.4 | 34.6 |
| **Total equity** | **153.4** | **179.9** | **196.9** | **216.3** | **241.0** |

Defendants also attached as Exhibit 1 to Mr. Candido's declaration the entire transcript from the May 19, 2010 preliminary injunction hearing in the Cascal Litigation.

At the hearing held on plaintiff's motion for expedited relief on June 18, 2010, plaintiff's counsel indicated that the complete financial information in the "Project Atlantis November 2009" exhibit was precisely what plaintiff's had argued were material and omitted from Sembcorp's May 21 Statement:

MR. WISSBROECKER: Exhibit eight to the Candido declaration, which was filed –

THE COURT: Yes.

MR. WISSBROECKER: – late –

THE COURT: Project Atlantis. I see it, November 2009.

MR. WISSBROECKER: So, looking back at Judge Kaplan's decision, one of the things that he focused on was, this particular information that was in this confidential memorandum which Cascal received when they were determining whether or not they wanted to make an offer for Biwater shares. *Within this document are the summary, complete summary – I'm sorry – not summary, complete financial*

- 6 -

> *projections that we were complaining were absent from the tender offer documents*.

*See* Declaration of Mark S. Reich in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Expenses ("Reich Decl."), Ex. E at 10:15-11:10.

In response, Sembcorp informed plaintiff and the Court that it would be releasing this information to the Company's shareholders and that it would be extending the expiration of the initial tender offer period so that Cascal shareholders would have time to digest the additional financial information.  As a result, plaintiff agreed to temporarily withdraw his motion for preliminary injunction, while reserving his rights to re-file the motion pending review of these materials and further developments.

On or around June 21, 2010, Sembcorp filed the Amendment, containing the complete Cascal projections provided to Sembcorp by Cascal and the entire transcript of the preliminary injunction hearing in the Cascal Litigation.  Sembcorp also extended the initial Tender Offer period 17 days, from June 21, 2010, to July 8, 2010.

The parties discussed a potential settlement of the case.  On June 23, 2010, Sembcorp filed a motion to dismiss.  On July 9, the initial Tender Offer period expired and Sembcorp announced that it had obtained 92.26% of the Company's shares and commenced a subsequent offering for the remaining shares.  On July 16, 2010, plaintiff filed an amended complaint.  During its continuing investigation of the case, counsel for plaintiff concluded that because the complete financial projections were disclosed, which omission was the principal complaint in plaintiff's action, as well as the transcript in the Cascal Litigation, plaintiff's claim was for the most part now moot.  On August 10, 2010, Sembcorp announced that it had obtained 97.66%, with the close of the additional subsequent offer period and that it would effect squeeze-out proceedings to own 100% of Cascal.

- 7 -

On or around August 27, 2010, plaintiff filed a motion seeking an order dismissing plaintiff's claims with prejudice, other than plaintiff's claim for an award of attorneys' fees and expenses.

## III.   PLAINTIFF'S COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND EXPENSES

It is well settled in the Second Circuit (and elsewhere) that a plaintiff is entitled to an attorneys' fee award pursuant to the "substantial benefit" doctrine when the action achieves a substantial benefit for a class of beneficiaries. *Seinfeld*, 246 A.D.2d at 294-95; *Koppel*, 743 F.2d at 135. The plaintiff seeking fees under this doctrine need not have won his lawsuit. *Koppel*, 743 F.2d at 135 (fees appropriate even where "no judgment or consent decree was entered and the complaint was dismissed as moot"); *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008-09 (2d Cir. 1975) ("There is no question, however, that federal courts may award counsel fees based on benefits resulting from litigation efforts even where adjudication on the merits is never reached."). Fees may be awarded to the plaintiff when the suit "'has become moot because the relief sought is otherwise obtained.'" *Savoie*, 84 F.3d at 56. Moreover, unlike in some other circuits, in the Second Circuit, the plaintiff is not required to show that the complaint had sufficient merit to survive a motion to dismiss before the plaintiff can recover fees where mooted by the defendant's corrective action. *Id.* at 57. A fee award is appropriate so long as counsel's causation of the benefit can be sufficiently established. *Id.* at 56.

Here, plaintiff filed an action based on Sembcorp's inadequate disclosures in its May 21 Statement and was a substantial factor in Sembcorp disclosing material information prior to the Cascal shareholders' consideration of the tender offer – a "substantial benefit" to Cascal shareholders. Accordingly, plaintiff is entitled to an award of attorneys' fees.

Plaintiff's primary goal in the litigation was to enjoin the Tender Offer until and unless the shareholders of Cascal were provided with an opportunity to tender or otherwise exchange their

shares with the benefit of all material information available to them.  It cannot be disputed that as a direct and in direct response to plaintiff's litigation efforts, defendants disclosed significant additional disclosures in the form of material financial projections and complete information about the Cascal Litigation.  Defendants only produced this information *after* plaintiff filed a motion for injunctive relief seeking disclosure of this information and "[t]he chronological sequence of events is an important factor in determining whether or not it can be inferred that the defendants guided their actions in response to plaintiffs' lawsuit.'" *See Koppel*, 743 F.2d at 135 n.3.  In fact, when the defendant has taken action to moot the suit, as defendants did here, it is defendants who bear the burden of establishing the ***absence*** of a causal connection between the suit and the defendant's corrective action. *Id.* at 135.

As for the additional financial information disclosed by defendants, the projections were material to the shareholders' ability to decide whether or not to tender or exchange their shares pursuant to the Tender Offer.  *See, e.g.*, *United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998) ("investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest.  Surely, the average investor's interest would be piqued by a company's internal projections . . . .").  *See also In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007) (finding final projections materially omitted where earlier versions of the projections disclosed, and concluding that "[o]nce a [defendant] broaches a topic in its disclosures," the defendant must "provide information that is 'materially complete and unbiased by the omission of material facts'").  Non-disclosure of projections in similar circumstances has in and of itself been found to be grounds to enjoin a shareholder vote on a proposed merger. *See id.*  In *NetSmart*, the court noted: "***projections of this sort are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or (as already***

- 9 -

*discussed) market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects*."  *Id*.  Additionally, the additional information regarding the Cascal Litigation was material to the shareholders' ability to understand whether the Court in the Cascal Litigation approved the substantive fairness of the terms of the Tender Offer and decide whether or not to tender or exchange their shares pursuant to the Tender Offer.  *See, e.g.*, *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 252 (2d Cir. 1973) (finding disclosure of dispute not enough and omission of "just how much was actually at stake in litigation" a material omission).

The disclosure of the additional material information significantly benefited the shareholders by providing them with material facts prior to the shareholders' consideration of a merger.  It is well settled that this type of disclosure-related, "therapeutic" benefit is a substantial benefit that warrants a fee award.  *See, e.g.*, *Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 395-96 (1970) (finding attorney fees appropriate method for vindicating the disclosure requirements of §14(a) of the Exchange Act).  In *Kopet*, for example, appellants sought attorneys' fees in connection with a class action involving claims of violations of the Securities Act of 1933 for failure to file a registration statement relating to the refinancing of property by a limited partnership.  523 F.2d at 1007.  "In the course of defending these claims, which were ultimately dismissed for lack of pendent jurisdiction, the appellees produced financial statements . . . ."  *Id*.  In remanding for the award of counsel fees, the Second Circuit observed that the partnership had "received substantial benefits from appellant's efforts in the litigation before it, including the production of certified financial statements." *Id*. at 1009; *see also e.g.*, *Eisenberg v. Chicago Milwaukee Corp*., No. 9374, 1988 Del. Ch. LEXIS 141, at *8 (Del. Ch. Oct. 25, 1988) ("Where a representative shareholder succeeds in correcting invalid disclosures in connection with a transaction between the corporation and its stockholders, out case law recogniz[e]s that for fee awarding purposes, the corporation and all of its shareholders are benefits.");

- 10 -

*Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) ("a heightened level of corporate disclosure, if attributable to the filing of a meritorious suit, may justify an award of counsel fees"); *Wis. Inv. Bd. v. Bartlett*, No. 17727. 2002 Del. Ch. LEXIS 42, at *17 (Del. Ch. Apr. 9, 2002) ("Although no monetary benefit was created, I do agree that a therapeutic benefit was created by the supplemental disclosures."), *aff'd*, 808 A.2d 1205 (Del. 2002).

Finally, any argument that these disclosures were not material or did not provide a benefit to Cascal shareholders is belied by the fact that defendants, although under no directive other than plaintiff's insistence to do so, took the extraordinary step of including the information in the Amendment.  By failing to disclose this information initially and only doing so at plaintiff's insistence, defendants' actions demonstrated that this material information would not have been disclosed to plaintiff or to Cascal shareholders absent plaintiff's vigorous litigation efforts.

## IV.    THE AMOUNT OF FEES REQUESTED IS REASONABLE UNDER THE "LODESTAR" APPROACH

Attorney fee awards for litigation that has produced a substantial benefit are established through the "lodestar" method. *Savoie*, 166 F.3d at 460.  This method "'multipl[ies] the numbers of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area' and, 'once this base or "lodestar" rate [is] established,' . . . determine[s] the final fee by then deciding whether to take into account 'other less objective factors, such as the "risk of litigation," the complexity of the issues, and the skill of the attorneys.'"  *Id*.  An application of these factors demonstrates the reasonableness of the fee requested here.

### A.    The Time and Labor Expended by Counsel

Plaintiff's counsel has expended $85,335.00 in attorney and paralegal time, and incurred $8,602.34 in unreimbursed expenses in connection with this litigation, including expenses related to

- 11 -

the retention of plaintiff's expert consultant.[3]  *See* Reich Decl., ¶¶19-22.  As demonstrated by the

firm's resume (Reich Decl., Ex A), counsel are among the most prominent, experienced and well-

regarded securities practitioners in the nation.  Therefore, their hourly rates are reasonable here.  *See*

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1477, 1481 (E.D.N.Y. 1989) (finding

time and hour charges "entirely fair and reasonable" where the "rates are the usual rates charged by

[counsel]").  Thus, the lodestar figure is $93,937.34.

### B.    A Multiplier of 1.9 to 2.16

Plaintiff has requested a multiplier of 1.9 to 2.16 to be applied to the lodestar figure that

results in a fee award in the range of $180,000 to $200,000.[4]  Such a multiplier is consistent with

those generally awarded in class actions in federal courts.  *See, e.g.*, *County of Suffolk*, 710 F. Supp.

at 1480 ("The Second Circuit has affirmed the use of a 2.26 multiplier for complexity, contingent

risk, and quality of representation, including the benefit obtained for the class, counsel's efficiency,

its skill,  prior experience and standing and the quality of opposing counsel.");  *Stop & Shop*

*Supermarket Co. v. Smithkline Beecham Corp.*, No. 03-4578, 2005 U.S. Dist. LEXIS 9705, at *54.

*60 (E.D. Pa. May 20, 2005) (finding 15.6 multiplier reasonable where multipliers "'ranging from

one to four are frequently awarded in common fund cases when the lodestar method is applied'");

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (finding a "modest"

multiplier of 4.65 fair and reasonable); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH),

2005 U.S. Dist. LEXIS 24890, at *28-*29 (S.D.N.Y. Oct. 19, 2005) ("In [the Second] Circuit,

contingency fees of 1.85 times the lodestar and greater have been deemed reasonable by the courts").

---

[3]      Such time and expense description does ***not*** include any time or expense incurred in the
bringing of this motion.

[4]      A multiplier of two would result in $187,874.68.

587395_1

Moreover, the complexity of the issues, the risk of litigation, and the skill of the attorneys involved in this action supports the use of a multiplier of two.  This case involved complex issues of federal securities law and required plaintiff's counsel to extensively examine and analyze the facts and data in this case, including but not limited to press releases, SEC filings, the financial and business prospects of the Company, Biwater and Sembcorp, and the Cascal Litigation.  Additionally, plaintiff and his counsel were under the gun from the outset in the litigation.  The time pressures inherent in this case made it necessary for those attorneys litigating this action to "drop everything" at critical junctures in the case to ensure that Cascal shareholders were adequately informed before being asked to decide whether to tender or exchange their shares pursuant to the Tender Offer.  Additionally, the stakes in the litigation were high for both parties.  Sembcorp clearly had a vested interest in seeing the Tender Offer completed.  Sembcorp was a well-capitalized litigant that retained highly competent, aggressive and high-profile counsel.  On the other hand, Cascal shareholders had an interest in having all material information before making a decision in connection with a corporate transaction. Thus, the amount at stake for the class was significant, and the litigation was of critical importance to Cascal's shareholders in that it ensured full disclosure of all material information.

The Court should also consider the efficiency with which plaintiff's counsel here litigated this case and achieved the results sought in an expedited fashion.  Counsel did the legwork efficiently and uncovered the facts that revealed material non-disclosures that could have served as the basis for enjoining the Tender Offer.  *See Netsmart*, 924 A.2d at 203.  Thus, counsel should be awarded a multiplier for producing the sought-after benefits efficiently, rather than punished for taking the quick action that accounted for the relatively small amount of time spent on the case.  *See, e.g.*, *County of Suffolk*, 710 F. Supp. at 1480 ("'The "quality of representation" factor is intended to

- 13 -

permit a district court . . . to reward "particularly resourceful" legal work that "secures a substantial benefit . . . with a minimum of time invested . . . .""").

Even more, counsel undertook representation in this case on a wholly contingent basis, and, even though it did so with the hope that its fees and costs would be reimbursed if successful, a favorable outcome to this suit was far from certain.  Under such circumstances, plaintiff's counsel should be rewarded "not only for the legal services he renders but for the loan of those services." Richard Posner, *Economic Analysis of Law*, at 534, 567 (4th ed. 1992).  That is so because "'[a] lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept [contingent] fee award cases.'"  Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981).  "The need for such an adjustment is particularly acute in class action suits.  The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent. . . . [T]he failure to make any provision for risk of loss may result in systematic undercompensation of plaintiffs' counsel in a class action case . . . ."  *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992).  And the contingency multiplier awarded for plaintiff's counsel's loan of legal services should take into account that fact that "[t]he implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans."  Posner, *supra*, at 534, 567.

Here counsel's contingency representation of plaintiff and the class necessitated the provision of sufficient resources to prosecute the litigation, including available funds to compensate staff and pay the considerable out-of-pocket expenses, including the retention of an expert consultant, that cases such as this one require.  In addition, counsel had to advance these funds with the knowledge

- 14 -

that it would not be reimbursed on an ongoing basis and that the fees and costs might not be repaid at all.  Thus, counsel is entitled to compensation for its services, the value of the loan of its services, and the increased rate on that loan because of the high risk of non-payment.  "Courts in [the Second] Circuit have long recognized that the risk associated with a case bears heavily upon the determination of an appropriate fee award."  *In re Marsh & McLennan Cos., Inc. Sec. Litig*., No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *53 (S.D.N.Y. Dec. 23, 2009).

Finally, "[p]rivate actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices." *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *26. As the court in *Hicks* explained:

> Such actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.  Due to the dispersed, and relatively small, losses among a large pool of investors, the class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual investors to take the time and effort to initiate the action. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a private attorney general is ***vital to the continued enforcement and effectiveness of the Securities Acts.***"

*Id*. at *26-*27.  Thus, that plaintiff's counsel served a broader public interest by litigating this action, justifies the reasonableness of the fee sought here.

- 15 -

## V.     CONCLUSION

For the foregoing reasons, plaintiff respectfully requests a fee award the Court deems appropriate within the range of $180,000-$200,000.

DATED:  November 19, 2010                    Respectfully submitted,

                                             ROBBINS GELLER RUDMAN & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             DAVID A. ROSENFELD
                                             MARK S. REICH

                                                     s/ Mark S. Reich
                                             ———————————————————
                                                   MARK S. REICH

                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)
                                             srudman@rgrdlaw.com
                                             drosenfeld@rgrdlaw.com

                                             ROBBINS GELLER RUDMAN & DOWD LLP
                                             DARREN J. ROBBINS
                                             RANDALL J. BARON
                                             A. RICK ATWOOD, JR.
                                             DAVID T. WISSBROECKER
                                             EUN JIN LEE
                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)
                                             darrenr@rgrdlaw.com
                                             randyb@rgrdlaw.com
                                             ricka@rgrdlaw.com
                                             dwissbroecker@rgrdlaw.com
                                             elee@rgrdlaw.com

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
16 West 46th Street, 7th Floor
New York, NY  10036
Telephone:  212/490-9550
212/986-0158 (fax)

Attorneys for Plaintiff

587395_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 19, 2010.

s/ Mark S. Reich
MARK S. REICH

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  MReich@rgrdlaw.com

# Mailing Information for a Case 1:10-cv-04481-SHS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anthony Mathias Candido**
  anthony.candido@cliffordchance.com,trish.keats@cliffordchance.com,MCO@cliffordchance.com

- **Laura Jane McLaren**
  laura.mclaren@cliffordchance.com

- **Mark Samuel Reich**
  mreich@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@lerachlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Curtis Victor Trinko**
  ctrinko@trinko.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
A. Rick Atwood                                      , Jr
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

Randall J. Baron
Robbins Geller Rudman & Dowd LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Brian Hoffmann
Clifford Chance US, LLP (NYC)
31 West 52nd Street
New York, NY 10019

Eun Jin Lee
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101
```

**William Earl Wallace**                                      , III
Clifford Chance Us LLP
2001 K St., Nw
Washington, DC 20006

**David T. Wissbroecker**
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101