UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALAN G. STEVENS, Individually and on Behalf of All Others Similarly Situated, | : : : | Civil Action No. 1:10-cv-04481-SHS |
| | : | CLASS ACTION |
| Plaintiff, | : : | |
| vs. | : : : | DECLARATION OF MARK S. REICH IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND |
| SEMBCORP UTILITIES PTE LTD., | : : | EXPENSES |
| Defendants. | : : : | |

587498_1

I, MARK S. REICH, declare:

1. I am an attorney at law, licensed to practice before the courts of the State of New York. I am a member of the law firm of Robbins Geller Rudman &Dowd LLP, counsel in the above-captioned action (the "Action") pending in the United States District Court, Southern District of New York. The identification and background of my firm and its partners is attached hereto as Exhibit A. I am familiar with the facts and proceedings herein, and submit this declaration in support of Plaintiff's Motion for an Award of Attorneys' Fees and Expenses.

2. The function of this declaration is to present the Court with a detailed factual background of the various events and efforts of plaintiff and his counsel surrounding the Action to assist the Court in evaluating the quality of the legal services rendered by plaintiff's counsel and the reasonableness of plaintiff's motion for attorneys' fees. The facts set forth in this declaration are principally derived from the pleadings and proceedings in this Action and the investigation and examination of publicly available and confidential Company materials reviewed by plaintiff's counsel before and during the course of the litigation.

3. The Action was brought on behalf of all holders of Cascal N.V. ("Cascal" or the "Company") common stock by representative plaintiff Alan G. Stevens. The Action alleged that Sembcorp Utilities Pte Ltd. ("Sembcorp") violated §14(e) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78n(e), in connection with a Schedule TO Tender Offer Statement and Offer to Purchase filed with the Securities and Exchange Commission ("SEC") on May 21, 2010 (the "May 21 Statement").

4. At the time this Action was commenced, Cascal was a New York Stock Exchange ("NYSE") listed company that is the leading provider of water and wastewater services to customers

- 1 -

587498_1

in eight countries. ¶19.[1] While other companies have suffered during the recent global financial crisis, Cascal has performed extraordinarily well and its value as an acquisition target was clear. ¶¶20-25.  On March 1, 2010, Sembcorp, who had previously been negotiating the purchase of just the 58.5% stake in Cascal held by its majority shareholder, Biwater, informed Cascal that it was making a tender offer to acquire all of the Company's issued and outstanding shares at a price somewhere in the range of $6.50 to $7.00 per share. ¶¶27-49.  On March 7, 2010, Sembcorp submitted a letter to the Board containing its firm offer to make a tender offer to acquire all of Cascal's issued and outstanding shares at $6.75 per share. ¶52. Cascal determined that Sembcorp's offer was inadequate. ¶¶50, 53.

5. On or about May 21, 2010, Sembcorp filed the May 21 Statement with the SEC containing the terms of the Tender Offer and commenced the tender offer for all of the issued and outstanding shares of Cascal for $6.75 per share (the "Tender Offer"). *See* Ex. B hereto. In the May 21 Statement, Sembcorp disclosed a summary of financial information provided to Sembcorp by Cascal. *Id*. at 25-26.  Also in the May 21 Statement, Sembcorp described the result of the action filed by Cascal against Sembcorp, *Cascal N. V. v. Sembcorp Utilities Pte Ltd. et al.*, 10 Civ. 3613 (LAK) (the "Cascal Litigation") as "[t]he court then denied the Company's motion for a preliminary injunction and cleared the way for the Offer to go forward." *Id*. at 4, 35, 53.

6. Plaintiff filed an action on June 9, 2010 against Sembcorp arising out of its violations of §14(e) of the Exchange Act in connection with the May 21 Statement.

---

[1] Unless otherwise stated, all "¶" references are to the Amended Complaint for Violation of §14(e) of the Securities Exchange Act of 1934, filed July 16, 2010.

587498_1

7. From the outset of the litigation, plaintiff's counsel vigorously pursued discovery. On or about June 10, 2010, plaintiff attempted to negotiate expedited discovery with defendants' counsel. Plaintiff also engaged an expert consultant in the area of corporate transactions to assist in the review of the Tender Offer.

8. On or around June 17, 2010, plaintiff filed a motion for temporary restraining order and a motion for expedited discovery and for setting a hearing on plaintiff's motion for preliminary injunction. In the motion for temporary restraining order, plaintiff sought an order from the Court temporarily restraining the consummation of the Tender Offer until the Court could decide whether Sembcorp was required to make further disclosures under the federal securities law, and until all required disclosures are made.

9. Sembcorp opposed plaintiff's motion and filed certain documents in support of its opposition. Among other things, the documents contained an Exhibit 8 to the declaration of one of Sembcorp's attorneys, Anthony M. Candido, which was entitled "Project Atlantis November 2009." *See* Ex. C hereto. This document contained confidential financial and other information about Cascal that was provided to Sembcorp by Biwater Investments Ltd. ("Biwater"), and which had not previously been made public including detailed financial projections for all segments of Cascal's business, as well as a detailed discussion of those segments. *See, e.g.*, *id*. at 50-52, 72-123.

10. The documents also contained an Exhibit 1 to the declaration of Mr. Candido, attaching the entire transcript from May 19, 2010 preliminary injunction hearing in the Cascal Litigation. *See* Ex. D hereto.

11. At the hearing held on plaintiff's motions for expedited relief on June 18, 2010, plaintiff's counsel indicated that the complete financial information in the "Project Atlantis November 2009" exhibit was precisely what plaintiff's had argued were material and omitted from

Sembcorp's Offer to Purchase. *See* Ex. E hereto. In response, Sembcorp informed plaintiff and the Court that it would be releasing this information to the Company's shareholders and that it would be extending the expiration of the initial tender offer period so that Cascal shareholders would have time to digest the additional financial information. *Id*. at 12:24-13:5. As a result, plaintiff agreed to temporarily withdraw his motion for preliminary injunction, while reserving his rights to re-file the motion pending review of these materials and further developments. *Id*. at 46:20-47:23.

12. On or around June 21, 2010, Sembcorp filed the Amendment, containing the declaration of Mr. Candido attaching the complete Cascal projections provided to Sembcorp by Cascal and the entire transcript of the preliminary injunction hearing in the Cascal Litigation. *See* Ex. F hereto. Sembcorp also extended the initial Tender Offer period 17 days, from June 21, 2010, to July 8, 2010.

13. The parties discussed a potential settlement of the case. On June 23, 2010, Sembcorp filed a motion to dismiss. On July 9, the initial Tender Offer period expired and Sembcorp announced that it had obtained 92.26% of the Company's shares and commenced a subsequent offering for the remaining shares. On July 16, 2010, plaintiff filed an amended complaint. During its continuing investigation of the case, counsel for plaintiff concluded that because the complete financial projections were disclosed, which omission was the principal complaint in plaintiff's action, as well as the transcript in the Cascal Litigation, plaintiff's claim was for the most part now moot. On August 10, 2010, Sembcorp announced that it had obtained 97.66%, with the close of the additional subsequent offer period and that it would effect squeeze-out proceedings to own 100% of Cascal. On or around August 27, 2010, plaintiff filed a motion seeking an order dismissing plaintiff's claims with prejudice, other than plaintiff's claim for an award of attorneys' fees and expenses.

14.     The complete financial projections and the transcript of the preliminary injunction hearing in the Cascal Ligitation had not been previously disclosed in the May 21 Statement.  Given the sheer magnitude of the litigation, and the extraordinary value assigned to it, it cannot be disputed that this information was highly material and defendants' under federal securities law was required to disclose it.

15.     Plaintiff and Cascal's public shareholders simply could not have made an informed decision about whether to tender or otherwise exchange their shares pursuant to the Tender Offer without this highly material information.  Moreover, by failing to disclose the information initially and only doing so at plaintiff's insistence, defendants' actions demonstrate that this material information would not have been disclosed to plaintiff or to Cascal's public shareholders absent plaintiff's vigorous prosecution efforts.

16.     Counsel for plaintiff conferred with counsel for defendants both at the time the disclosures were made and prior to the filing of this motion concerning resolution of the action but counsel were unable to reach agreement.

17.     Plaintiff submits that the motion for attorneys' fees is fair and reasonable in light of the substantial and valuable benefits conferred upon Cascal shareholders via the Action.  The sequence of events confirms the validity of plaintiff's allegations that Sembcorp failed to act in accordance with the federal securities law in connection with the May 21 Statement, and issued corrective disclosures in response to plaintiff's litigation efforts.

18.     The excellent services rendered by plaintiff's counsel in prosecuting this Action in an efficient and expeditious manner, and the risk of nonpayment assumed by plaintiff's counsel in prosecuting this Action warrants the fee requested.  Plaintiff's counsel has expended significant time, effort and resources in the diligent and successful prosecution of this Action.

19. The total number of hours spent on this litigation by my firm is 234.50. The total lodestar amount for attorney/paraprofessional time based on the firm's current rates is $85,335.00. The hourly rates shown below are the usual and customary rates charged for each individual in all of our cases. A breakdown of the lodestar is as follows:

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Rosenfeld, David | (P) | 0.25 | 575 | 143.75 |
| Wissbroecker, David | (P) | 31.00 | 535 | 16,585.00 |
| Lee, Eun Jin | (A) | 100.75 | 345 | 34,758.75 |
| Reich, Mark S. | (A) | 17.50 | 535.00 | 9,362.50 |
| Brandon, Kelley T. | (I) | 1.00 | 420 | 420.00 |
| Paralegal I | | 56.00 | 285-295 | 16,225.00 |
| Paralegal II | | 28.00 | 280 | 7,840.00 |
| | | | | |
| TOTAL | | 234.50 | | $85,335.00 |

(P) Partner
(A) Associate
(I) Investigator

20. My firm incurred a total of $8,602.34 in expenses in connection with the prosecution of this litigation. They are broken down as follows:

*EXPENSES*

From Inception to November 18, 2010

| DISBURSEMENT | TOTAL |
|---|---|
| Meals, Hotels & Transportation | $ 1890.14 |
| Photocopies | 360.50 |
| Messenger, Overnight Delivery | 55.45 |
| Filing, Witness & Other Fees | 776.76 |
| Lexis, Westlaw, Online Library Research | 2940.99 |
| Experts/Consultants/Investigators | 2,578.50 |
| TOTAL | $ 8,602.34 |

21. The expenses pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers, check records and other documents and are an accurate record of the expenses.

- 6 -

22.     The fees and expenses set forth above do not include any time or expense incurred in bringing the fee motion.

23.     Plaintiff's counsel also has made a thorough study of the legal principles applicable to plaintiff's claims, including the areas of federal securities law applicable to the Action. Plaintiff and his counsel have concluded exactly what Sembcorp was required to disclose under the law in connection with the Tender Offer: disclosure of material information to enable plaintiff and the class to make an informed decision regarding whether to tender or otherwise exchange their shares pursuant to the Tender Offer. Accordingly, it is plaintiff's counsel's well-founded belief, as further analyzed in the accompanying Motion for an Award of Attorneys' Fees and Expenses, that the award of attorneys' fees and expenses is appropriate.

24.     The services provided by plaintiff's counsel primarily on an expedited basis included: (i) investigation of the relevant facts and transactions; (ii) legal research (including research on federal securities law); (iii) drafting of lengthy, detailed complaints and motions; (iv) negotiations with defendant's counsel; and (v) review and analysis of documents, specifically, defendants' SEC filings, in connection with the Tender Offer.

25.     In plaintiff's counsel's view, all of these efforts were necessary and reasonable in connection with the prosecution of the Action. At all relevant times, plaintiff's counsel coordinated their team of more than a half-dozen lawyers and legal professionals assisting them, so as to proceed as efficiently as possible and avoid unnecessary duplication of effort, while simultaneously providing the resources and manpower to prepare comprehensive pleadings and motions on an expedited basis. The time pressures inherent in this case made it necessary for those attorneys litigating this action to "drop everything" at critical junctures in the case to ensure that Cascal's

shareholders were adequately informed before making a decision in connection with the Tender Offer.

26. This Action was undertaken by plaintiff's counsel on a wholly contingent basis. One of the factors of major importance in assessing the reasonableness of counsel's fees in a representative action of this type is the contingent nature of the fee or the risk of litigation. When we undertook to act for plaintiff and the class in this matter, it was with the knowledge that we might spend hundreds of hours of hard work, advance hundreds of thousands of dollars in expenses and litigate against some of the best defense lawyers in the United States. Each of these contingencies in fact materialized and plaintiff's counsel has spent hundreds of hours, expended substantial amounts of capital, and encountered some of the most capable transactional lawyers and corporate litigators in the country. All of plaintiff's counsel's efforts were expended without assurance of ever obtaining any compensation for our efforts, or even reimbursement for our out-of-pocket expenses or the overhead of our offices, which is an increasingly substantial consideration in these times.

27. The term "the risks of litigation" is no mere euphemism. All too often it is asserted that plaintiff's counsel in significant representative actions taken on a contingent basis are really running no risk. This argument is totally contrary to the facts. There are numerous contingent cases wherein plaintiff's counsel, after the expenditure of thousands of hours and significant amounts of their own funds, receive compensation far below their regular hourly rates and in many instances no compensation or reimbursement of their expenses whatsoever. In truth, it is only the knowledge and realization by defendants and their counsel that the leading members of the plaintiffs' class action bar are prepared to, and will in fact, commit the resources necessary to force a resolution on the merits and go to trial, and can ultimately succeed at trial, that lead to successful results such as the one achieved in this Action.

28. In addition, the pecuniary loss suffered by plaintiff's counsel in other actions where insufficient settlement offers are rejected and plaintiff's counsel receive little or no fee can be substantial. This occurs in many hard-fought lawsuits where, because of the discovery of facts unknown when the case commenced, highly professional efforts of members of the plaintiffs' bar produce no result for the class and hence, no fee for counsel. Plaintiff's counsel in this Action knows from personal experience that despite the most vigorous and competent of efforts, success in contingent representative actions is never assured. Lawyers who specialize in contingent matters live in a world of uncertainty. Unlike defendants' counsel and other members of the defense bar, who are paid regularly for each hour of service and are reimbursed on a current basis for expenses incurred, plaintiff's counsel do not have a steady flow of income.

29. Plaintiff's counsel respectfully submits that their fee request is fair and reasonable based upon the persistent and skilled litigative efforts of plaintiff's counsel, the amount of time and services devoted by plaintiff's counsel in pursuing, prosecuting and overseeing plaintiff's claims on a fully-contingent basis, and the quality of services rendered in pursuing the complex claims asserted by plaintiff in this Action.

30. Given the material benefits achieved, substantial services rendered by plaintiff's counsel and the numerous substantial litigation risks and complexities faced by plaintiff, I submit that a requested award for expenses and attorneys' fees in the range of $180,000 to $200,000 is fair and reasonable and fully merits this Court's approval.

31. Attached are true and correct copies of the following exhibits:

587498_1

Exhibit A:     Firm Resume of Robbins Geller Rudman & Dowd LLP;

Exhibit B:     Cascal N.V. Schedule TO filed with the SEC on May 21, 2010;

Exhibit C:     Project Atlantis November 2009 Presentation;

Exhibit D:     *Cascal N.V. v. Sembcorp Utilities Pte Ltd.*, No. 10 Civ. 3613, Transcript (S.D.N.Y. May 19, 2010);

Exhibit E:     *Stevens v. Sembcorp Utilities Pte Ltd.*, No. 10 CV 4481, Transcript (S.D.N.Y. Jun. 18, 2010); and

Exhibit F:     Cascal N.V. Amendment No. 7 to Schedule TO filed with the SEC on June 21, 2010.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.  Executed this 19th day of November, 2010, at Melville, New York.


                                                        s/ Mark S. Reich
                                                        MARK S. REICH

CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 19, 2010.

s/ Mark S. Reich
MARK S. REICH

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  MReich@rgrdlaw.com

587498_1

# Mailing Information for a Case 1:10-cv-04481-SHS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anthony Mathias Candido**
  anthony.candido@cliffordchance.com,trish.keats@cliffordchance.com,MCO@cliffordchance.com

- **Laura Jane McLaren**
  laura.mclaren@cliffordchance.com

- **Mark Samuel Reich**
  mreich@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@lerachlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Curtis Victor Trinko**
  ctrinko@trinko.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
A. Rick Atwood                                                    , Jr
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

Randall J. Baron
Robbins Geller Rudman & Dowd LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Brian Hoffmann
Clifford Chance US, LLP (NYC)
31 West 52nd Street
New York, NY 10019

Eun Jin Lee
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101
```

**William Earl Wallace**, **III**
Clifford Chance Us LLP
2001 K St., Nw
Washington, DC 20006

**David T. Wissbroecker**
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101