UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALAN G. STEVENS, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

      v.

SEMBCORP UTILITIES PTE LTD.,

                 Defendant.

10 Civ. 4481 (SHS)


**SEMBCORP UTILITIES PTE LTD.'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND EXPENSES AND IN SUPPORT OF SEMBCORP UTILITIES PTE LTD.'S
CROSS MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**


William E. Wallace III
Anthony M. Candido
John J. Song
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Tel: 212-878-8000
Fax: 212-878-8375

*Attorneys for Defendant
Sembcorp Utilities Pte Ltd.*

Dated: December 13, 2010

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 2

     I.      The Tender Offer and the *Cascal* Litigation. ............................................ 2

     II.    The *Stevens* Complaint and the TRO Motion. ......................................... 3

     III.   Mr. Stevens' Document Requests. ............................................................ 4

     IV.   Sembcorp Moves to Dismiss the Original Complaint. ............................. 4

     V.    Mr. Stevens Files an Amended Complaint and Sembcorp Moves to
           Dismiss the Amended Complaint. ........................................................... 5

     VI.   Mr. Stevens Moves to Dismiss His Own Amended Complaint and Seeks
           Attorneys' Fees. ...................................................................................... 5

ARGUMENT ................................................................................................................... 6

     I.      Mr. Stevens Is Not Entitled to Recover Attorneys' Fees Against Sembcorp. ......... 6

           A.     Mr. Stevens' Request for Attorneys' Fees Against Sembcorp Is
                  Barred by Second Circuit Law Because Sembcorp Is Not Among
                  the Class of Shareholders Who Received the Purported Benefit of
                  Mr. Stevens' Suit. ....................................................................... 7

           B.     Mr. Stevens Has Not Conferred a "Substantial Benefit" on Cascal
                  Shareholders. ............................................................................ 10

     II.    Mr. Stevens Should Pay Sembcorp's Attorneys' Fees Associated with
           Moving to Dismiss an Amended Complaint That Mr. Stevens Knew (and
           Has Effectively Conceded) Had No Legal Basis. ................................... 14

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Brautigam v. Bratt,*
    2000 WL 1264289 (S.D.N.Y. Sept. 5, 2000)..........................................................................9

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991)..........................................................................................................9

*Christensen v. Kiewit-Murdock Inv. Corp.,*
    815 F.2d 206 (2d Cir. 1987)...........................................................................1, 7, 8, 9

*In re Centerline Holdings Co. Sec. Litig.,*
    678 F. Supp.2d 150 (S.D.N.Y. 2009),
    *aff'd*, 2010 WL 2303312 (2d Cir. Jun. 9, 2010) ...................................................11

*In re Netsmart Techs., Inc. S'holders Litig.,*
    924 A.2d 171 (Del. Ch. 2007) ..........................................................................13

*In re Time Warner Inc. Sec. Litig.,*
    9 F.3d 259 (2d Cir. 1993) ....................................................................................11

*Kopet v. Esquire Realty Co.,*
    523 F.2d 1005 (2d Cir. 1975) ..........................................................................13

*Koppel v. Wien,*
    743 F.2d 129 (2d Cir. 1985)...............................................................................9

*Laprade v. BlackRock Fin. Mgmt, Inc.,*
    2002 WL 31499244 (S.D.N.Y. Mar. 28, 2002) ...............................................9

*Lerner v. FNB Rochester Corp.,*
    841 F. Supp. 97 (W.D.N.Y. 1993) .....................................................................11

*Mills v. Electric Auto-Lite Co.,*
    396 U.S. 375 (1970)..........................................................................................7

*Savoie v. Merchants Bank,*
    84 F.3d 52 (2d Cir. 1996)............................................................................7, 8, 11

*Seinfeld v. Robinson,*
    246 A.D.2d 291 (1st Dep't 1998)........................................................................9

*Sheehan v. Little Switzerland, Inc.,*
    136 F. Supp. 2d 301 (D. Del. 2001) ..................................................................11

Page(s)

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ...............................................................................13

## Statutes and Rules

15 U.S.C. § 77z-1(c)(1) (2010) ...............................................................................15

15 U.S.C. § 77z-1(c)(3)(A)(ii) (2010) ....................................................................15

15 U.S.C. § 78n(e) (2010) ..................................................................................3, 10

15 U.S.C. § 78j(b) (2010) ........................................................................................8

15 U.S.C. § 78u-4(b) (2010) ..................................................................................14

Fed. R. Civ. P. 11(b) .......................................................................................14, 15

17 C.F.R. § 229 (2010) ...........................................................................................11

17 CFR § 240.10b-5 (2010) ....................................................................................11

Defendant Sembcorp Utilities Pte Ltd. ("Sembcorp") respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion for an Award of Attorneys' Fees and Expenses ("Motion") and In Support of Sembcorp's Cross Motion for an Award of Attorneys' Fees and Expenses ("Cross Motion").

## PRELIMINARY STATEMENT

At bottom, Mr. Stevens' lawsuit was a failed effort to get leverage over Sembcorp, at a time when Sembcorp was about to launch a tender offer for the shares of Cascal N.V. ("Cascal"). Mr. Stevens' claims never had any merit, and in the end (after the Tender Offer went through) he moved to dismiss his own case.  There is nothing fair about Mr. Stevens' request that Sembcorp foot the bill for his attorneys fees.

Moreover, Second Circuit law conclusively bars any such award.  In *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206 (2d Cir. 1987) the Court specifically held that attorneys' fees can be recovered under the "substantial benefit" doctrine ***only*** where the assessment is to be spread amongst the class of those who allegedly received the benefit.  The law does ***not*** permit an award of fees that simply shifts the expense of litigation to an adverse party, as Mr. Stevens seeks here.

Moreover, Mr. Stevens' suit did not create any "substantial benefit" to Cascal shareholders.  The disclosure of financial projections for which Mr. Stevens now claims credit are the same materials he earlier said were misleading because "stale."  Moreover, Sembcorp disclosed all the information of even plausible interest concerning those projections *well before* Mr. Stevens ever surfaced.

In fact, it is Mr. Stevens who should pay attorneys' fees to Sembcorp for his vexatious conduct, filing an Amended Complaint he knew (and later effectively conceded) had no legal basis, and putting Sembcorp to the expense of preparing a motion to dismiss it.

# BACKGROUND

**I.    The Tender Offer and the *Cascal* Litigation.**

Sembcorp's tender offer arose out of the effort of Cascal's majority shareholder — Biwater — to sell its stake in the Company.

In order to facilitate Biwater's efforts, Cascal entered into a confidentiality agreement with Biwater, to permit Biwater to share Company information with potential purchasers, including Sembcorp, which had expressed interest in a potential deal.  Sembcorp and Biwater also entered into a non-disclosure agreement (the "NDA"), and Biwater thereafter provided Sembcorp with due diligence material concerning Cascal.

On April 26, 2010, Sembcorp and Biwater reached an agreement.  Sembcorp agreed to commence a tender offer for all of the issued and outstanding shares of Cascal, and Biwater agreed to tender its stake in the Company on certain terms.

The Company, however, sought to stop the transaction, and on April 30, 2010, brought suit against Sembcorp and Biwater.  Cascal alleged that Sembcorp would violate insider trading restrictions by launching the tender offer if it did not disclose certain Company information that Sembcorp had obtained in due diligence, principally certain financial projections.  At the same time, Cascal claimed that Sembcorp was not permitted to disclose that information under the terms of the NDA.

On May 19, 2010, Judge Kaplan denied Cascal's application for a preliminary injunction, ruling that Cascal had "no likelihood of success on the merits at all," and expressing serious doubts that the Complaint even identified sufficiently serious issues to make them a fair ground for litigation.

Two days later, Sembcorp launched the Tender Offer by filing a Schedule TO-T, *i.e.*, the "Offer to Purchase."  Although Sembcorp did not believe them to be material, the Offer to

Purchase set out (in an abundance of caution) the line items of (arguable) interest from the financial projections that had been at issue in the *Cascal* litigation, including projections of net profit, turnover, operating expenses, and EBITDA.  Sembcorp also explained that neither Cascal nor Biwater had vouched for the projections, that they had been prepared only for internal use, and that they might not comply with GAAP.  Sembcorp also cautioned that the projections constituted "forward–looking information."

On May 25, 2010, Cascal voluntarily withdrew its complaint without prejudice.

## II.    The *Stevens* Complaint and the TRO Motion.

Only then did Mr. Stevens surface.  On June 7, 2010, he filed a Complaint asserting violations of Section 14(e) of the Securities Exchange Act of 1934, and sought to enjoin the tender offer based on purported "omissions" in Sembcorp's securities filings.

The heart of Mr. Stevens' Complaint was that Sembcorp's *disclosure* of the financial projections was misleading principally because Mr. Stevens speculated that Sembcorp might have more up-to-date projections (it did not); and because Sembcorp had presented the projections only in "summary form" rather than attaching the underlying due diligence materials from which they were drawn.  (*See*, *e.g*., Compl. ¶ 48-52.)

Mr. Stevens sat on the Complaint until just before the offering period was coming to a close, and then (on June 16, 2010) moved for a temporary restraining order seeking to block the consummation of the Tender Offer.  In his supporting papers, Mr. Stevens argued, among other things, that Sembcorp's disclosure of the due diligence financial projections was "misleading" because the projections were then "stale," *i.e*., Sembcorp should disclose any more up-to-date projections that it had.  (*See* TRO Mem. at 9 n.6.)

In its Opposition papers, Sembcorp attached the underlying due diligence materials from which the financial projections "summary" in the Offer to Purchase had been drawn, in order to show (i) that the "summary" fairly represented the even arguable line items of interest; and (ii) that Sembcorp had no more up-to-date projections.

At the TRO Hearing, Mr. Stevens' counsel noted that Plaintiff''s "principal complaint" was the purported non-disclosure of the financial projections that Cascal had provided to Sembcorp (*see* TRO Hearing Tr. at 9; *see also* Tr. at 11), and said that that issue was mooted by Sembcorp's attachment of the due diligence materials to its opposition papers (which Sembcorp was to file with the SEC). On this basis, Mr. Stevens withdrew the TRO motion, and told the Court that he would thereafter consider how he would proceed with the case.

## III.   Mr. Stevens' Document Requests.

After the TRO Hearing, Mr. Stevens' counsel told Sembcorp that he would attempt to identify specific document disclosures, if any, that remained at issue based on his experts' review of the financial projections documents. On June 19, 2010, counsel for Mr. Stevens sent a number of document requests to Sembcorp, focused on information it was speculated that Sembcorp might have (including potential additional information concerning financial projections). Sembcorp, however, had none of the requested information, and so informed Mr. Stevens.

## IV.   Sembcorp Moves to Dismiss the Original Complaint.

On June 23, 2010, Semcorp filed a detailed motion to dismiss the original Complaint, on the grounds, among others that Mr. Stevens' asserted claim concerning the purported non-disclosure of Cascal's financials did not identify any material omissions, and was, in any event,

moot because Sembcorp had disclosed all of the relevant documents it received from Cascal containing financial projections.

## V.     Mr. Stevens Files an Amended Complaint and Sembcorp Moves to Dismiss the Amended Complaint.

Mr. Stevens did not respond to Sembcorp's motion to dismiss.  Instead, on July 16, 2010, Mr. Stevens filed an Amended Complaint seeking money damages (the Tender Offer was then set to expire on July 30).  Although the Amended Complaint dropped, what before was Mr. Stevens' "principal complaint" concerning financial projections, it contained no new meaningful allegations and did not point to any new facts that had come to light since he filed the original Complaint.

On August 4, 2010, Sembcorp filed a detailed motion to dismiss the Amended Complaint, essentially on the grounds that what remained of the allegations did not identify any material omission, but rather amounted only to speculation that Sembcorp "might have" omitted information (despite Mr. Stevens' failed attempt to fashion document requests to discover such information).  The Amended Complaint rested on the circular (and legally insufficient) pleading that Mr. Stevens could not say what was missing because Sembcorp had not disclosed it.  (*See* Am. Comp. ¶ 113.)

## VI.    Mr. Stevens Moves to Dismiss His Own Amended Complaint and Seeks Attorneys' Fees.

Again, Mr. Stevens did not respond to Sembcorp's motion to dismiss.  This time, Mr. Stevens interposed his own motion to dismiss the Amended Complaint with prejudice.  Mr. Stevens explained that his claims were "for the most part, now moot" because Sembcorp had disclosed the due diligence materials containing financial projections in its opposition to the TRO.   Mr. Stevens, however, did not explain why he had filed the Amended Complaint in the

first place (or why he had put Sembcorp to the expense of opposing it) when Mr. Stevens had made this very concession well before, *i.e*., at the TRO Hearing.

Mr. Stevens did say, however, that he wanted Sembcorp to pay his attorneys' fees, based on the notion that he had created a "substantial benefit" for Cascal shareholders by prompting Sembcorp to disclose the due diligence material.  The request is the subject of Mr. Stevens' present Motion.

## ARGUMENT

## I.    Mr. Stevens Is Not Entitled to Recover Attorneys' Fees Against Sembcorp.

Mr. Stevens' request for attorneys' fees for a completely failed and meritless litigation — which he only lazily prosecuted (likely for the obvious reasons)[1] — should be flatly rejected.  As a legal matter, his request under the "common fund" or "substantial benefit" doctrine (Mem. at 8) fails on two independent grounds.

*First*, attorneys' fees can be recovered under the "substantial benefit" doctrine ***only*** against the class of individuals who purportedly benefited from the suit.  The law does not permit an award of fees that simply shifts the expense of litigation to an adverse party.  Here, the purported class of beneficiaries comprises Cascal shareholders at the time of the Tender Offer, ***not*** Sembcorp.

*Second*, Mr. Stevens simply did not create a "substantial benefit" for any putative class of Cascal shareholders.  The disclosed projections for which he now claims credit were — by his own earlier statements to this Court — "stale" at the time of the Tender Offer.  Moreover,

---

[1]    In addition to the events described in the Background section *supra*, Mr. Stevens never took steps to give notice to the purported class he sought to represent as required.  And Mr. Stevens does not provide the Court with time entries in support of the present Motion for attorneys fees to allow any assessment of the work he did do.

Sembcorp disclosed all the information of even plausible interest concerning those projections *well before* Mr. Stevens ever surfaced.

      A.      **Mr. Stevens' Request for Attorneys' Fees Against Sembcorp Is Barred by Second Circuit Law Because Sembcorp Is Not Among the Class of Shareholders Who Received the Purported Benefit of Mr. Stevens' Suit.**

The "common fund" or "substantial benefit" doctrine "'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense. Consistent with this perception, the doctrine has been applied to award fees against a fund created by the plaintiff for the benefit of others, to award fees against a fund not created by the plaintiff but redistributed as a result of its attorney's efforts, and, in shareholder derivative actions, to award fees indirectly against other shareholders benefitting from the law suit by taxing the nominal corporate defendant." *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 211 (2d Cir. 1987) (citations omitted).

As the Supreme Court explained in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396-97 (1970), a fee award against a common fund charges the ***beneficiaries*** of the action, and not the adverse party:

> To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is *not to saddle the unsuccessful party with the expenses* but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit.

(emphasis added).

It follows, however, that "[t]he common fund doctrine does not apply . . . when fees are sought from the assets of the losing party, and the fee award would not come from a common fund nor be assessed against persons who have derived a benefit from the lawsuit." *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996).

The same principles apply when the purported "substantial benefit" is not a common fund to be distributed, but rather some non-monetary benefit conferred on the class.  Attorneys' fees may be awarded **only** if they are to be paid by the class of those who received the benefit.[2]  The doctrine does not allow litigation expenses to be shifted to an adversary.

That is precisely the import of the Second Circuit's decision in *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206 (2d Cir. 1987).   *Christensen* also was a shareholder class action suit concerning an acquisition.  Plaintiff alleged that shareholders holding certain classes of stock had not received adequate compensation because they had been given (allegedly devalued) shares of the acquiring company's stock, instead of cash (purportedly as part of a manipulative scheme in violation of Section 10(b) of the Exchange Act).  *Id*. at 208-09.  Plaintiff sought an order compelling the acquiring company to redeem those shares for cash.  *Id*. at 209.

After plaintiff filed suit, the acquiring company launched a tender offer for the shares, which mooted the claim for relief.  Plaintiff then moved to dismiss the action, and to recover attorney's fees against the defendant, *i.e*., the acquiring company.  *Id*. at 210.  The district court granted the motion to dismiss, but denied the application for attorney's fees.

On appeal, the Second Circuit affirmed, holding that "the common fund doctrine does not apply to instant action because appellants seek fees and costs from the [acquiring company], not from any 'fund' or from those persons who purportedly have benefited from appellants' law suit." *Id.* at 212.  The Court noted that there "was no basis for holding that the [acquiring company] has benefited  from  the  [shareholder's]  lawsuit  or  that  it  has  been  unjustly  enriched  at  [the

---

[2]   "Common fund" and "substantial benefit" are terms used by the Second Circuit to refer to the same essential doctrine.  *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996) ("[W]e use the term 'common fund doctrine' somewhat broadly so as to incorporate the 'common benefit' doctrine.").  Historically, the doctrine has its origins in cases dealing with the distribution of a common fund, and later was applied to cases involving non-monetary benefits conferred on a purported class.

shareholder's] expense," and that an award of attorney's fees against the acquiring company would not "pass-through to any of the stockholders purportedly benefiting from law suit." *Id*.[3]

Mr. Stevens' case is no different, and accordingly, his Motion should be denied. Mr. Stevens concedes that his Motion rests on the notion that his suit conferred a purported "substantial benefit" on those who held shares of Cascal at the time of the Tender Offer, ***not Sembcorp***.[4] The idea is that the suit supposedly caused Sembcorp to make additional material disclosures to those shareholders, who were considering whether or not to tender their shares to Sembcorp. (*See* Mem. at 8-9.) There is no claim that Sembcorp somehow benefited from the suit, or that an award of fees against Sembcorp would pass through to those shareholders.[5, 6]

---

[3] *See also Brautigam v. Bratt*, 2000 WL 1264289 (S.D.N.Y. Sept. 5, 2000) ("the common fund doctrine does not apply when fees are sought directly from the assets of the losing party and the fee award would neither come from a common fund nor be assessed against persons who have derived benefit from the lawsuit").

[4] As discussed *infra* in Section II, in reality, his suit did not confer a "substantial benefit" on Cascal shareholders either.

[5] Mr. Stevens mistakenly relies on one case involving a derivative action, *Seinfeld v. Robinson*, 246 A.D.2d 291 (1st Dep't 1998) and another concerning a partnership, *Koppel v. Wien*, 743 F.2d 129 (2d Cir. 1985). (*See* Mem. at 8.) In those cases, any fees assessed against the defendants would pass through to the beneficiary class. In fact, in *Christensen*, the Second Circuit expressly distinguished *Koppel* on this basis. *See* 815 F.2d at 211-12.

[6] Nor does Mr. Stevens even try to contend that Sembcorp's attachment of due diligence materials to its Opposition to the TRO makes out the "exceptional" case of "bad faith," *see* 815 F.2d at 212, such as a fraud on the Court, or tactics of delay or harassment. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Nor reasonably could he. Indeed, courts are particularly wary of awarding attorneys' fees in cases — like this one — where the plaintiff has voluntarily dismissed the action before the Court has ordered any relief. As the Court noted in *Laprade v. BlackRock Fin. Mgmt, Inc.*, 2002 WL 31499244 (S.D.N.Y. Mar. 28, 2002), such awards "would discourage future defendants from voluntarily changing their conduct, conduct which may not be illegal, because they fear liability from the possibility of being assessed staggering attorneys' fees. . . .[would] spawn[] litigation over attorneys' fees requiring analysis of the defendant's subjective motivations in changing its conduct."

**B.      Mr. Stevens Has Not Conferred a "Substantial Benefit" on Cascal Shareholders.**

Mr. Steven's Motion also should be denied for the legally independent reason that his suit did not confer a "substantial benefit" on Cascal shareholders.

Mr. Stevens' suit rested on the mistaken notion that Sembcorp's disclosure of financial projections obtained from Cascal in due diligence — set out in public filings well before Mr. Stevens ever surfaced — was insufficient because Sembcorp presented those projections only in "summary form."  (*See*, *e.g.*, Compl. ¶¶ 48-52.)  The idea now is that Sembcorp's later disclosure of the underlying due diligence material (from which the "summary" was drawn) gave Cascal shareholders material information they were entitled to, but would not have received but for Mr. Stevens' suit.  (*See* Mem. at 4-6, 9-10.)  Not so.

For starters, the projections were not material.  Indeed, Mr. Stevens himself argued to this Court (in connection with his motion for a TRO) that the projections were "stale" by the time of the Tender offer (his point at the time that he wanted Sembcorp to disclose any more recent projections, although it turned out Sembcorp had none).  (TRO Mem. at 9 n.6.)  Mr. Stevens noted that Cascal had subsequently issued financial statements in February 2010 giving guidance for the year ending March 31, 2010 with new projected figures for earnings per share, revenue, and EBITDA.  Mr. Stevens even argued that the due diligence projections were "misleading" because not up-to-date.  (*See* TRO Mem. at 9 n.6.)

Moreover, Sembcorp disclosed everything it was required to disclose and every piece of even plausibly material information from the underlying due diligence material *before* Mr. Stevens' suit.  Mr. Stevens has never identified, as required under Section 14(e) of the Exchange

Act: (i) any information that Sembcorp did not disclose that it had a duty to disclose; (ii) any statement rendered "misleading" by the omission of some material facts.[7]

*First*, Sembcorp had no general duty to disclose financial projections (let alone "stale" ones).  Shareholders are not entitled to a disclosure simply because they wish to know more, even if the information is "material."[8]  Rather, Sembcorp's disclosure obligations in the Tender Offer were governed by the requirements of Schedule TO and Regulation M-A, 17 C.F.R. § 229, which did not require it to disclose any of the financial projections at issue here.  The offeror has no other duty of disclosure to the target's shareholders,[9] absent some special relationship, and there was none here.  (By contrast, the *Cascal* litigation involved insider trading allegations, but those were not at issue here).

*Second*, Sembcorp's "summary form" presentation of the financial projections was in no way misleading.  Indeed, Mr. Stevens has never specifically identified any purportedly material

---

[7]   The point here is ***not*** that Mr. Stevens' Complaint had to be able survive a motion to dismiss in order to recover attorneys' fees under the "substantial benefit" doctrine.  That is not the rule in the Second Circuit.  *See Savoie*, 84 F.3d at 57.  But that rule makes sense only because it is also the rule that attorneys' fees must be borne by the class of beneficiaries, not an adversary.  *See id*. at 56; *see also supra* Section I.  Indeed, It would be grossly unfair to assess attorneys' fees against Sembcorp on the basis that Mr. Stevens' suit forced Sembcorp to do something Mr. Stevens had no legal right to demand of it, and on the basis of a Complaint that had no cognizable legal basis.  Moreover, the specific point argued in the text above is that Mr. Stevens' suit did not confer a "substantial benefit" on Cascal shareholders for many of the same reasons his claims had no merit to begin with, *i.e.*, there was nothing material left for Sembcorp to disclose.

[8]   *See, e.g.*, *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact.");  *In re Centerline Holdings Co. Sec. Litig.*, 678 F. Supp. 2d 150, 162 n.77 (S.D.N.Y. 2009), *aff'd*, 2010 WL 2303312 (2d Cir. Jun. 9, 2010) ("Even if all information is material, there is no liability under Rule 10b-5 unless there is a duty to disclose").

[9]   *See, e.g.*, *Lerner v. FNB Rochester Corp.*, 841 F. Supp. 97, 103 (W.D.N.Y. 1993); *Sheehan v. Little Switzerland, Inc.*, 136 F. Supp. 2d 301, 310 (D. Del. 2001).

omissions from that summary, let alone explain how any such omissions rendered Sembcorp's statements misleading.

Rather, Mr. Stevens' "argument" consists simply of setting out Sembcorp's summary, and then longer excerpts from the underlying due diligence material. (*See* Mem. at 3 & 5-6.) Apparently, the point is that because the underlying material has more line entries, there must have been information missing from the summary. But this argument-by-chart-length skips over the key legal issues of whether Sembcorp said anything misleading or whether any of that (stale) information was material.[10]

A substantive comparison of the charts — which Mr. Stevens does not attempt — shows that Sembcorp's summary fairly reflected any (even plausibly) material information contained in Cascal's (stale) projections. Specifically, the summary contained all the income projections that would be relevant to a valuation (if they were not stale): net profit, profit before tax, EBITDA, EBIT, total operating expenses, and total turnover. Mr. Stevens' "long version" of the income projections (from the underlying due diligence material) simply breaks down those figures into sub-categories, *e.g.*, "operating expenses" are shown comprising staff costs, materials costs, and "other" costs.

Mr. Stevens does not explain how or why such sub-categories would be material to any valuation of the company (particularly if "stale"), or why omission of such sub-categories would render the summary misleading. Nor does Mr. Stevens indicate any limit to his reasoning (*e.g.*, should "staff costs" be shown as a function of the salary of every individual employee).

---

[10] Throughout this litigation, Mr. Stevens also has ignored the numerous qualifications that accompanied the summary projections, including, among others, that: (i) "Neither the Company [Cascal] nor the Stockholder [Biwater] has made any representation to [Sembcorp] . . . concerning the projections; (ii) they were prepared "solely for internal use and not with a view toward public disclosure" or with complying with GAAP; and (iii) the "financial projections constitute forward–looking information."

The only other difference is that the "long version" of the chart includes cash flow and balance sheet projections.  But again, Mr. Stevens does not explain how omission of those (stale) projections rendered Sembcorp's statements about projected **income** misleading, nor does he even proffer an argument that those other (stale) projections are material to any valuation.[11]

In short, Mr. Stevens' suit did not provide Cascal shareholders with any additional material information, clear up any purported misrepresentations, or provide any other "substantial benefit."  It only served to add unnecessary expense to the Tender Offer process, which, if anything, represented a potential detriment to that class.

---

[11]  Indeed, Mr. Stevens' own cited authority shows otherwise.  For example, in *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007) (Mem. at 9), the court held that simply the defendant should have disclosed income related projections — *i.e.*, " revenue, cost, or earnings estimates," id. at 202 — exactly what Sembcorp did here.  Moreover, a critical difference between *Netsmart* and this case, is that the defendant Board of Directors in *Netsmart* (with independent fiduciary duties to shareholders) had disclosed earlier versions of projections without disclosing the final versions.  The Court held that once the Board had disclosed one set of projections it had to disclose the rest.  *See Id*. at 202-204.  There is no question that Sembcorp disclosed the most up-to-date versions of the financial projections it had from the start, although as Mr. Stevens noted, those projections were stale by the time of the Tender Offer.

*Kopet v. Esquire Realty Co*., 523 F.2d 1005 (2d Cir. 1975) is no help to Mr. Stevens either. (*See* Mem. at 10).  In *Kopet*, the Court found that the disclosure of certain financial statements by managing partners to other partners in a partnership conferred a substantial benefit because the partnership agreement *required* such disclosure.  *Id*. at 1007.  *Kopet* does not address whether under what circumstances financial projections might be material, and, of course, in this case there is nothing even remotely like a contractual or fiduciary duty that Sembcorp owed to Cascal shareholders.  Mr. Stevens also cites to *United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998) (Mem. at 9), but that case stands only for the generic proposition that projections generally "may" under certain circumstances be material and support an insider trading case.

**II.     Mr. Stevens Should Pay Sembcorp's Attorneys' Fees Associated with Moving to Dismiss an Amended Complaint That Mr. Stevens Knew (and Has Effectively Conceded) Had No Legal Basis.**

If any attorneys' fees and costs should be paid, it is Mr. Stevens who owes them for filing an Amended Complaint he knew had no legal basis (this on top of the original Complaint, which was no better), and putting Sembcorp to the expense of preparing a motion to dismiss it.

Mr. Stevens has effectively conceded that the Amended Complaint had no real basis.

*First*, Mr. Stevens' counsel conceded at the TRO hearing that Mr. Stevens' "principal complaint" in the ***original*** Complaint — purported omissions of financial projections — was ***mooted*** by Sembcorp's disclosure of underlying financial projection documentation.  (*See* Transcript of June 18, 2010 hearing before this Court at 9; *see also id*. at 11.)  Indeed, that ironically is the basis of Mr. Stevens' Motion for attorneys' fees here, *i.e.*, that the original Complaint righted the supposed wrong.

*Second*, the Amended Complaint itself pointed to no new facts (let alone material facts) that came to light since the original Complaint, and Mr. Stevens did not claim to have learned anything new.  Indeed, Mr. Stevens pleaded that he knew only what was in the public record.  (*See* Am. Compl. ¶ 113 (purportedly omitted information "available only to Sembcorp, and not to the Company's shareholders").)

*Third*, after Sembcorp went to the expense of moving to dismiss the Amended Complaint, Mr. Stevens simply filed his ***own*** motion to dismiss based expressly on the point that his claims were "for the most part, now moot" for the very same reason they were before, *i.e.*, because of Sembcorp's disclosure of financial projection documentation at the TRO Hearing.  (Pl.'s Motion at 1).  In other words, even by Mr. Stevens' own account, the Amended Complaint was moot before it was filed.

- 14 -

This sort of vexatious practice should not be countenanced, and Mr. Stevens should bear its full costs.  Upon final adjudication of all actions arising under the Private Securities Litigation Reform Act, "the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion."  15 USC 77z-1(c)(1).  Where, as here, a pleading substantially fails "to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure [there is a presumption in favor of] an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 USC 77z-1(c)(3)(A)(ii).

For these reasons, we respectfully request an award of $42,375 to Sembcorp for its attorneys' fees and expenses associated with preparing and filing its Motion to Dismiss the Amended Complaint, which are detailed in the accompanying Declaration of Anthony M. Candido, dated December 13, 2010.[12]

---

[12]  This amount represents only a fraction of what Sembcorp was required to expend in defending against Mr. Stevens' suit, which had no merit from the start.  Thus, although an award of all those fees would be warranted, Sembcorp is seeking fees relating only to the most egregious aspect of Mr. Stevens litigation conduct.

## CONCLUSION

For all the foregoing reasons, this Court should deny the Plaintiff's Motion for Attorneys'

Fees and Expenses and grant the Defendant's Cross Motion for Attorneys' Fees and Expenses.

Dated: New York, New York
       December 13, 2010

                                        Respectfully submitted,


                                        _____/s/_____
                                        William E. Wallace III
                                        Anthony M. Candido
                                        John J. Song
                                        CLIFFORD CHANCE US LLP
                                        31 West 52nd Street
                                        New York, New York 10019
                                        Tel: 212-878-8000
                                        Fax: 212-878-8375

                                        *Attorneys for Defendant*
                                        *Sembcorp Utilities Pte Ltd.*