UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ALAN G. STEVENS, Individually and on Behalf of All Others Similarly Situated, | : : : : | Civil Action No. 1:10-cv-04481-SHS <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | : : | |
| vs. | : : : | REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |
| SEMBCORP UTILITIES PTE LTD., | : : | |
| Defendant. | : : : | |

590972_1

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFF'S ACTION CAUSED A SUBSTANTIAL BENEFIT | 3 |
| III. | A FEE AWARD MAY PROPERLY BE PAID BY SEMBCORP AS CASCAL'S SUCCESSOR | 6 |
| IV. | CONCLUSION | 9 |

**I.      INTRODUCTION**

Sembcorp Utilities Pte Ltd.'s ("Sembcorp") Opposition to Plaintiff's Motion for an Award of Attorneys' Fees and Expenses ("Opposition") concedes that plaintiff's lawsuit caused defendant to make the material disclosures that produced the substantial benefit to the shareholders of Cascal N.V. ("Cascal"). This concession, as a matter of law in the Second Circuit, demonstrates that plaintiff is entitled to a fee award. *See Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996); *Brautigam v. Bratt*, No. 98 Civ. 9060, 2000 WL 1264289, at *1 (S.D.N.Y. Sept. 5, 2000) (stating that, in the Second Circuit, the substantial benefit fee award analysis is focused on whether the ***defendant has satisfied its burden*** of proof to establish the "absence of a causal connection between the [law]suit and the defendant's . . . action.").[1] Further, Sembcorp has not argued that the amount of the fee award requested by plaintiff is somehow unreasonable, which certainly would have been difficult to do in light of the billing records submitted both by plaintiff's counsel and defense counsel.

Instead, Sembcorp focuses its opposition on two issues that are easily countered by black-letter legal principles. First, Sembcorp argues that the substantial benefits produced by this litigation are really no benefit at all because the information disclosed was not material.[2] That argument conflicts with the current state of the law, which regards financial projections as material information, especially in the context of a corporate merger transaction. *See In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 213 (Del. Ch. 2007). That principle is especially pervasive with

---

[1]    Unless otherwise indicated, all emphasis added and citations and footnotes are omitted.

[2]    Of the two items of disclosures at issue – the complete financial projections for Cascal and the transcript of the Cascal/Sembcorp litigation – Sembcorp only challenges the materiality of the complete financial projections, thus conceding the materiality and the substantial benefits produced by disclosure of the transcript.

respect to estimates of free cash flow, which Sembcorp concedes were not originally disclosed in the summary financials, and made public only as a result of plaintiff's efforts in this litigation. Moreover, Judge Kaplan, in considering the very information that was disclosed via this litigation, opined that it was "certainly exceptionally likely that" the materiality of the information could be established at trial. *See Cascal N.V. v. Sembcorp Utilities Pte Ltd.*, No. 10 Civ. 3613, Transcript (S.D.N.Y. May 19, 2010) ("Transcript") at 38:21-39:1 ("it is certainly exceptionally likely that the plaintiff could establish at a trial that Sembcorp is in the possession of material nonpublic information [referring to, among other things, the complete financial projections], the disclosure of which would be necessary to make a tender offer not misleading").[3]  Thus, the Court should conclude that disclosure of the projections created a substantial benefit for Cascal shareholders.

Second, Sembcorp contends that even if this action caused a substantial benefit, because Cascal shareholders and not Sembcorp benefited from the additional disclosures it should not have to pay any fee award. Again, the state of the law is to the contrary. Even though Cascal and its shareholders are the beneficiaries of plaintiff's efforts in this litigation, and, in theory, plaintiff's fee award is taxable to Cascal and its owners (the shareholders), as practical matter that liability (the fee award) has been inherited by Sembcorp as a result of its acquisition of Cascal and it is now Semcorp's debt to pay. *O'Neill v. Church's Fried Chicken, Inc.*, 910 F.2d 263, 267 (5th Cir. 1990) ("any purchaser of a corporation also purchases that corporation's liabilities, whether unliquidated, disputed, or even unforeseen"). Plaintiff's fee award was earned as of the time the benefit was conferred, and any fee award made by this Court would be payment for that past debt, not some new

---

[3]  Attached as Exhibit D to the Declaration of Mark S. Reich in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Expenses ("Reich Decl."), filed on November 19, 2010.

obligation to be assessed against Sembcorp created as a result of this Court's decision. *See Joy Mfg. Corp. v. Pullman-Peabody Co.*, 729 F. Supp. 449, 460 (W.D. Pa. 1989) ("If attorneys' fees were earned at all for conferring this benefit, and we firmly believe that they were, then they were earned as of the moment the benefit was conferred."). Thus, it is proper that the fee award be taxed against Sembcorp, not as a "losing party," but as the successor of the assets and obligations of Cascal, the beneficiary of plaintiff's litigation.

## II.  PLAINTIFF'S ACTION CAUSED A SUBSTANTIAL BENEFIT

Having conceded that plaintiff's lawsuit caused the benefit to Cascal shareholders and that plaintiff's requested fee is reasonable in amount, Sembcorp makes a futile attack on materiality. As discussed in plaintiff's opening Motion, the record and the law support a finding of "materiality" is sufficient to justify the size of the fee requested.[4] That is because financial projections are material per se when disclosed in the context of a corporate merger transaction, especially where, as here, the disclosures contain free cash flows – Cascal shareholders "would obviously find it important to know what management and the company's financial advisor's best estimate of those future cash flows would be." *Netsmart*, 924 A.2d at 203. "Indeed, projections of this sort are probably among the most highly-prized disclosures by investors." *Id.*; *see also Brown v. Brewer*, No. CV 06-3731, 2010 U.S. Dist. LEXIS 60863, at *70-*71 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. '[T]here is a substantial likelihood that a reasonable shareholder would consider it important' in making his decision. . . . [T]he Ninth Circuit has

---

[4]  As noted, *supra*, Sembcorp does not dispute materiality with respect to the disclosed transcript, conceding the propriety of a fee award on that issue.

observed that: 'investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest. Surely, the average investor's interest would be piqued by a company's internal projections . . . .' Delaware courts concur.").

Despite the obvious materiality of this disclosure, Sembcorp argues that the complete projections it disclosed as a result of this litigation were not material under the facts of this case because, in its subjective opinion, the projections had unnecessary detail or were stale as compared to the summary financial information previously disclosed by Sembcorp. However, materiality is analyzed from the shareholder's point of view – not the view of a potential acquirer who is incentivized to acquire the Company for as cheaply as possible. Here, the complete financial projections were: (1) Cascal management's best estimates of the Company's future value; (2) provided as a whole to Sembcorp for its valuation of the Company; and (3) considered by Sembcorp in connection with its tender offer. Thus, the complete financial projections gave Cascal shareholders the same complete financial picture of Cascal that was available to Sembcorp, and permitted Cascal shareholders to look at the basis for the summary financial information, accept or modify the value indicated in the summary financial information depending on their analysis of the complete financial projections, and reach their own conclusions about the intrinsic value of the Company for the purposes of deciding whether or not to tender or otherwise exchange their shares at the Tender Offer price.

Under these circumstances, it cannot be said that the complete financial projections were not material to the Company's shareholders. In fact, in the Cascal/Sembcorp litigation, when Judge Kaplan considered the potential materiality of the complete financial projections, he stated that it was "exceptionally likely" that the complete financial projections were material. During the May 19, 2010 hearing, Judge Kaplan stated:

> After the parties entered into the Letter Agreement and the NDA, Cascal provided Sembcorp with a bundle of nonpublic information concerning all aspects of its business. It provided shareholder agreements with joint venture partners, tax returns and computation, financing documents relating to its debt arrangements, pricing information. Subsequently it provided projected revenues, costs, and expenses, including projected profit and loss balance sheet and cash flow through 2013.
>
> At Sembcorp's request, Cascal's senior executive management team, which included Cascal's chief executive officer and chief financial officer, met with Sembcorp executives on ***November 30, 2009 and made a presentation on Cascal' business and operations and disclosed the financial projections***.
>
> Although I will not make and could not on this record necessarily make a definitive final factual determination, it is ***certainly exceptionally likely*** that the plaintiff could establish at a trial that Sembcorp is in the possession of material nonpublic information, the disclosure of which would be necessary to make a tender offer not misleading.

Transcript at 38:6-39:1.[5] Notably, the November 2009 presentation Judge Kaplan mentioned above is exactly what plaintiff's lawsuit caused defendant to disclose – the "Project Atlantis November 2009" presentation provided to Sembcorp by Cascal containing complete financial projections of Cascal.

Defendant concedes that the "Project Atlantis November 2009" presentation, along with the transcript of the proceeding in the Cascal/Sembcorp litigation (that defendant does not dispute contains additional material information), were made available to the Company and its shareholders as a result of this litigation before they had to make a decision in connection with the Tender Offer. It is precisely because they were only disclosed after plaintiff's litigation efforts, and achieved in an expedited fashion in a high-risk environment, that supports the size of the fee requested here.

---

[5] Reich Decl., Ex. D.

### III. A FEE AWARD MAY PROPERLY BE PAID BY SEMBCORP AS CASCAL'S SUCCESSOR

Sembcorp's contention that it cannot be made to pay a fee award by this Court is flat wrong. If a substantial benefit is conferred on a target company and its shareholders by litigation during a tender offer, and the litigation is subsequently mooted, upon the completion of the tender offer, attorneys' fees may be awarded against the target company's successor. *See, e.g.*, *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 924 (E.D. Pa. 1993) (plaintiff filed suit in connection with tender offer; tender offer and merger completed; plaintiff's suit was rendered moot; court ordered a fee award pursuant to the substantial benefit doctrine to be paid by the acquiror company); *Prudential-Bache Secs., Inc. v. Matthews*, 627 F. Supp. 622, 626 (S.D. Tex. 1986) (plaintiff filed suit in connection with tender offer; tender offer and merger completed; plaintiff's suit was rendered moot; court granted fee award pursuant to the substantial benefit doctrine against corporation despite its new ownership); *In re First Interstate Bancorp Consol. S'holder Litig.*, 756 A.2d 353, 360 n.9 (Del. Ch. 1999) (fees were properly payable out of the corporate treasury of the acquired corporation, even though the tender offer had been consummated and the shareholders had been paid).

This is because attorneys' fees earned on the basis of the substantial benefit doctrine are earned at the moment that the substantial benefit is conferred. *Joy Mfg. Corp. v. Pullman-Peabody Co.*, 729 F. Supp. 449, 460 (W.D. Pa. 1989) ("If attorneys' fees were earned at all for conferring this benefit, and we firmly believe that they were, then they were earned as of the moment the benefit was conferred."). At that moment, the obligation to pay the attorneys' fees is accrued by the beneficiary or beneficiaries. *Id*. In the instance of where the beneficiary is a corporation that is acquired in a subsequent corporate merger, the obligation to pay the attorneys' fees passes to corporate successor because "any purchaser of a corporation also purchases that corporation's liabilities, whether unliquidated, disputed, or even unforeseen." *O'Neill*, 910 F.2d at 267.

*O'Neill* is instructive. In *O'Neill*, the plaintiff filed a derivative class action alleging that the board of Church's Fried Chicken ("Church") was improperly opposing a tender offer by Biscuit Investments, Inc. ("Biscuit"). *Id.* at 264. As a result of the lawsuit, the Church board withdrew its opposition. *Id.* at 264-65. After the takeover had been completed (thus mooting plaintiff's action), a federal district court in Texas granted a fee award to the plaintiff pursuant to the substantial benefit doctrine. *Id.* at 265.

The *O'Neill* defendant appealed the fee award to the Fifth Circuit, arguing that under the circumstances, a fee award was improper as it would have to be paid by Church's successor, Biscuit, whereas the persons who benefited from action were the former shareholders of Church who accepted and were cashed out pursuant to Biscuit's tender offer. *Id.* at 266. "It would be inequitable and contrary to the [substantial benefit] rule," Church argued, "to force the current owner of the company [referring to Biscuit] to pay for a 'common benefit' received by its prior owners." *Id.*

After taking defendant's arguments into consideration, the Court of Appeals of the Fifth Circuit affirmed the fee award, stating:

> Admittedly, this result in some respects appears to contravene the traditional purpose of the common benefit rule. Rather than taxing O'Neill's fees to the prior shareholders who benefited from the higher price her action allegedly prompted, as a practical matter our decision seems to tax those fees to the present shareholder, who was forced to pay the higher price and obviously enjoyed no benefit. This analysis, however, ignores the fact that ***any purchaser of a corporation also purchases that corporation's liabilities, whether unliquidated, disputed, or even unforeseen***.

*Id.* at 267. The court went on to explain that the result also made sense as a practical matter:

> That O'Neill was incurring attorneys' fees in her derivative action on behalf of Church's was hardly a surprise to Biscuit, which was itself actively involved in related litigation that had at times been consolidated with O'Neill's action, at least for certain limited purposes. The burden may properly be placed on the offerer to account for the cost of such potential fee awards in the calculation of his tender offer, or to make other arrangements to shift the cost of fees to the shareholders to whom the tender offer is made. And, if the offerer does so, this will have the effect of causing the benefited shareholders, as such, to ratably bear the cost of prosecuting

- 7 -

>   the derivative suit which produced the benefit.  ***Moreover, as a practical matter, there is no other reasonably available means to allow O'Neill to recover her expenses*** in producing the common benefit that Church's in essence concedes her derivative action has bestowed.

*Id*.

Here, plaintiff's litigation conferred a substantial benefit on Cascal and Cascal shareholders by causing Sembcorp to disclose material information in the Amendment #7 to the Schedule TO Tender Offer Statement, filed on or around June 21, 2010.[6]  Thus, as of that date, Cascal and Cascal's obligation to pay plaintiff's attorneys' fees began to accrue.  When Sembcorp subsequently acquired Cascal, it also acquired Cascal's obligation to pay the fee award.  Thus, like in *O'Neill*, Sembcorp is the proper party that bears the responsibility of paying the fee award, regardless of whether it is, technically, not the party that received the benefit of plaintiff's litigation.  As explained in *O'Neill*, any other result would unfairly result in no fee awards for achieving a substantial benefit in the case of a tender offer.

*Christensen*, relied on by defendant, does not stand for the proposition that an acquiring company may never pay a fee award pursuant to the substantial benefit doctrine.[7]  *Christensen* involved a class action by a subset of the shareholders of The Continental Group, Inc. ("Continental") who claimed they, as holders of certain classes of stock, were differently and adversely affected than shareholders holding other classes of stock by a merger agreement proposed by the defendant board of directors.  *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 208-

---

[6]   Reich Decl., Ex. F.

[7]   None of the cases cited by defendant even addresses this issue.  *See, e.g.*, *Brautigam*, 2000 WL 1264289, at *2 (involving plaintiff's requirement to seek a preliminary injunction to set aside a portion of the common fund in a common fund situation); *Laprade v. BlackRock Fin. Mgmt., Inc.*, No. 99 Civ. 9288, 2002 WL 31499244 (S.D.N.Y. Mar. 28, 2002) (involving calculating the value of the termination of a merger of trusts when projections demonstrated favorable results of merger).

- 8 -

09 (2d Cir. 1987). After the class action was filed, the Continental board announced a revised merger plan that dealt with that plaintiff class of shareholders more favorably. *Id*. at 209-10. In affirming the denial of a fee award to the *Christensen* plaintiff, the court found it determinative that any benefit from the litigation had accrued only to the plaintiff class, which was made up of only a subset of Continental shareholders versus all of the shareholders. *Id*. at 210-12. Because all classes of shareholders were not equally affected by the *Christensen* plaintiff's litigation, the court concluded that taxing costs to Kiewit-Murdock Investment Corp., the successor of Continental, would not act as a conduit for shifting fees to the beneficiary class and was, therefore, improper. *Id*.

Here, unlike *Christensen*, plaintiff's litigation conferred a substantial benefit on the entire Company as well as all of the shareholders of Cascal. *See Mills v. Electric Auto-Lite Co*., 396 U.S. 375 (1970) (explaining that by ensuring fair and informed corporate suffrage, the plaintiff's action had benefitted the company as a whole). Thus, because there is no same concern that the fee award is not being charged to the entire beneficiary class, *Christensen*'s ruling is not controlling here, and a fee award may be taxed against Sembcorp.

### IV.  CONCLUSION

For all the foregoing reasons, plaintiff requests that the Court grant his Motion for attorneys' fees and expenses.

DATED:  December 23, 2010              Respectfully submitted,

                                              ROBBINS GELLER RUDMAN & DOWD LLP
                                              SAMUEL H. RUDMAN
                                              DAVID A. ROSENFELD
                                              MARK S. REICH

                                                           s/ Mark S. Reich
                                                           MARK S. REICH

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mreich@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
EUN JIN LEE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
randyb@rgrdlaw.com
ricka@rgrdlaw.com
dwissbroecker@rgrdlaw.com
elee@rgrdlaw.com

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: 212/490-9550
212/986-0158 (fax)

Attorneys for Plaintiff

- 10 -

CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 23, 2010.

s/ Mark S. Reich
MARK S. REICH

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: mreich@rgrdlaw.com

590972_1

# Mailing Information for a Case 1:10-cv-04481-SHS

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Anthony Mathias Candido**
  anthony.candido@cliffordchance.com,trish.keats@cliffordchance.com,MCO@cliffordchance.com

- **Laura Jane McLaren**
  laura.mclaren@cliffordchance.com

- **Mark Samuel Reich**
  mreich@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@lerachlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Curtis Victor Trinko**
  ctrinko@trinko.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
A. Rick Atwood                                                      , Jr
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101

Randall J. Baron
Robbins Geller Rudman & Dowd LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

Brian Hoffmann
Clifford Chance US, LLP (NYC)
31 West 52nd Street
New York, NY 10019

Eun Jin Lee
Robbins Geller Rudman & Dowd LLP (San Diego)
```

655 West Broadway
Suite 1900
San Diego, CA 92101

**William Earl Wallace**                                                          , III
Clifford Chance Us LLP
2001 K St., Nw
Washington, DC 20006

**David T. Wissbroecker**
Robbins Geller Rudman & Dowd LLP (San Diego)
655 West Broadway
Suite 1900
San Diego, CA 92101