UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALAN G. STEVENS, Individually and on         :
Behalf of All Others Similarly Situated,     :
                                             :     10 Civ. 4481 (SHS)
                         Plaintiff,          :
                                             :     OPINION & ORDER
         -against-                           :
                                             :
SEMBCORP UTILITIES PTE LTD.,                 :
                                             :
                         Defendant.          :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Alan G. Stevens, a shareholder of Cascal N.V., initiated this suit alleging that defendant Sembcorp Utilities Pte Ltd. omitted material information from its tender offer to purchase all outstanding Cascal stock. Now pending before the Court is Stevens's motion for attorneys' fees and costs, and a cross-motion of Sembcorp seeking the same. For the reasons set forth below, both motions are denied.

## I. BACKGROUND

On May 21, 2010, Sembcorp commenced a tender offer for all outstanding Cascal common stock at $6.75 per share. (Decl. of Mark S. Reich dated Nov. 19, 2010 ("Reich Decl.") ¶ 5.) The offer was initially set to expire June 21. (*Id.* ¶ 12.)

Stevens filed this action two weeks later alleging that Sembcorp's offering documents were materially misleading in violation of Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e). Stevens's chief complaint was that the projections of Cascal's future financial performance in those documents were misleading because they omitted material information. (Compl. ¶¶ 48-52.)

On June 17, Stevens sought a temporary restraining order ("TRO") to prevent the expiration of the tender offer. (Reich Decl. ¶ 8.) In opposing this relief, Sembcorp submitted a report that contained more detailed financial projections than those included in the tender offer.[1] (*Id.* ¶ 9.) At a June 18 hearing on the TRO, Sembcorp stated that it intended to file this report with the Securities and Exchange Commission as a supplement to its original tender offer. (Hearing Tr. at 44-46, June 18, 2010.) It further informed the Court of its intention to extend the tender offer beyond June 21 for reasons unrelated to this litigation. (*Id.*) Sembcorp's plans, Stevens conceded, mooted the principal claims set forth in his original complaint. (*See id.* at 46-47; Pl.'s Mot. to Dismiss with Prejudice at 1.)

On June 21, Sembcorp made the promised SEC filings. (Sembcorp Utilities Pte Ltd. Schedule TO-T dated June 21, 2010, attached as Ex. B to the Decl. of Anthony M. Candido dated June 23, 2010.) By that time of that filing, more than 86 percent of the shares of Cascal had been tendered to Sembcorp. (*Id.*) When the offer finally expired on July 8, Sembcorp had obtained more than 92 percent of Cascal's shares. (Reich Decl. ¶ 13.) Sembcorp acquired the remaining Cascal shares via a subsequent tender offer and a squeeze-out merger. (*Id.*)

On July 20, Stevens filed an amended complaint alleging that Sembcorp had omitted from the tender offer material information concerning Sembcorp's multiyear efforts to purchase Cascal. These omissions allegedly gave Cascal shareholders "a false impression that the terms of the Tender Offer [were] developed pursuant to a robust and fair process." (Am. Compl. ¶ 113; *see id.* ¶¶ 88-112.) After Sembcorp moved to dismiss the amended complaint, Stevens voluntarily sought dismissal with prejudice. Stevens's motion was granted and Sembcorp's motion was dismissed as moot. (Order dated Sept. 23, 2010.) The pending cross-motions for attorneys' fees followed.

---

[1]   Sembcorp offered this report to demonstrate that the tender offer contained no material omissions. (Hearing Tr. at 34-35, June 18, 2010.)

## II. DISCUSSION

    A. <u>The common-fund rule does not permit Stevens to recover his attorneys' fees from Sembcorp</u>

Stevens claims that he is entitled to have Sembcorp pay his attorneys' fees because this lawsuit spurred the release of financial projections and other information that enabled Cascal's shareholders to better assess the adequacy of Sembcorp's tender offer.

The "long-standing 'American Rule'" is that "'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 210 (2d Cir. 1987) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). To avoid the prohibition on fee shifting, Stevens invokes the "common-benefit rule." Rooted in equity, this rule permits a party "to obtain reimbursement of attorneys' fees 'in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class' and *where it is possible to spread the costs proportionately among the members of the class*." *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995) (emphasis added) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). This common-benefit rule most often applies "in shareholder derivative actions[] to award fees indirectly against other shareholders benefiting from the law suit by taxing the nominal corporate defendant." *Christensen*, 815 F.2d at 211. In that scenario, a fee award against the corporate treasury is ratably borne by the corporation's shareholders. The common-benefit rule "does not apply, however, when fees are sought from the assets of the losing party, and the fee award would not . . . be assessed against persons who have derived benefit from the lawsuit." *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996).

It is uncontested that Sembcorp received no benefit from this suit. (*See* Pl.'s Reply in Supp. of Attorneys' Fees ("Pl.'s Reply") at 2, 8.) Stevens, however, submits that the additional

3

disclosures this lawsuit prompted constituted "a 'substantial benefit' to Cascal's shareholders" for the purposes of the common-benefit rule. (Pl.'s Mem. in Supp. of Attorneys' Fees at 8.) Even assuming this is correct, Stevens is not entitled to collect his fees from Sembcorp. Forcing Sembcorp to pay fees would not spread the costs of the litigation to the supposed beneficiaries of this suit—Cascal's shareholders. They have received cash for their shares from Sembcorp and have left the scene. Taxing Sembcorp just "saddle[s] the unsuccessful party with the expenses," which is not the purpose of the common-benefit rule. *Mills*, 396 U.S. at 396.

*Christensen*, as does the instant case, involved the attorneys' fees liability of a corporation that had completed a successful cash tender offer. The *Christensen* plaintiffs, preferred shareholders of a subsidiary of Kiewit Corp., sought attorneys' fees from Keiwit Corp. because their suit allegedly had prompted Kiewit Corp. to cash them out of their shares. The United States Court of Appeals for the Second Circuit held that the common-benefit rule did not permit a fee award because the plaintiffs' sought "fees and costs from Kiewit Corp., not from . . . those persons who purportedly have benefited from [the plaintiffs'] law suit," i.e. the preferred shareholders who profited from Kiewit's tender offer. 815 F.2d at 212. The court concluded that "an award of attorneys' fees and costs against Kiewit Corp. would not 'pass-through' to any of the stockholders purportedly benefiting from [the plaintiffs'] law suit. Rather, Kiewit Corp. would have to bear those expenses alone." *Id.* Such a result amounted to nothing more than impermissible fee shifting. *See id.* at 211. Sembcorp rightfully submits that the same reasoning applies in the case at bar.[2]

---

[2]   Stevens seeks to blunt the force of *Christensen* on the ground that any benefit obtained in that litigation went to the preferred shareholders of the acquired company, and not all the shareholders. Nothing in *Christensen* suggests that that is a meaningful distinction. The *Christensen* court did not reason that a fee award against Kiewit Corp. was improper because it would assess all shareholders for a benefit enjoyed only by some of them. Rather, it concluded that an award of attorneys' fees against Kiewit Corp. would not result in "*any* of the stockholders purportedly benefiting" from the suit paying the suit's costs. *Christensen*, 815 F.2d at 212 (emphasis added). The same conclusion obtains here.

In rejoinder, Stevens argues that "[i]f a substantial benefit is conferred on a target company and its shareholders by litigation during a tender offer, and the litigation is subsequently mooted, upon the completion of the tender offer, attorneys' fees may be awarded against the target company's successor." (Pl.'s Reply at 6.) A flaw in this successor-liability permutation of the common-benefit rule (which did not appear until Stevens's reply brief) is that it does not comport with the essential requirement that a common-benefit fee award "be assessed against persons who have derived benefit from the lawsuit." *Savoie*, 84 F.3d at 56; *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) (A "feature[] that [has] distinguished our common-fund cases from cases where the shifting of fees was inappropriate. . . . [is] confidence that the costs [of litigation] could indeed be shifted with some exactitude to those benefiting." (internal quotation marks omitted and last alternation in original)).

*O'Neill v. Church's Fried Chicken, Inc.*, 910 F.2d 263, 267 (5th Cir. 1990), the case upon which Stevens chiefly relies, does not stand for the broad successor liability he advocates. To the contrary, the *O'Neill* court recognized that holding an acquiring corporation liable for attorneys' fees after a successful tender offer is on its face "incongru[ous] . . . with the traditional purposes of the 'common benefit' rule." *Id.* at 266. *O'Neill* explained that, if it is to be imposed, such successor liability should be reconciled with the common-benefit rule's aim of taxing a suit's costs to the suit's beneficiaries. *See id.* at 266-67. The *O'Neill* court found successor liability appropriate in the case before it because the successor corporation was on notice that if it made a tender offer, it was likely that the target company to be acquired would be assessed attorneys' fees in a preexisting derivative suit brought on the target company's behalf. *See id.* at 267 & n.11. Moreover, in *O'Neill*, the target company had "in essence concede[d]" that the plaintiff's action had bestowed a "common benefit." *Id.* at 267. As a result, the offerer was in a position to lower the price offered to the target company's shareholders in anticipation of the fee

5

award, "causing the benefited shareholders, as such, to ratably bear the cost of prosecuting the derivative suit which produced the [tender offer]." *Id.* On this basis, the *O'Neill* court found it equitable to "burden . . . the offerer to account for the cost of such potential fee awards in the calculation of his tender offer." *Id.*

The circumstances that enabled a fee award in *O'Neill* are not present here. Stevens has not established how Sembcorp could have anticipated a fee award and priced it into its tender offer. The Court is aware of no preexisting derivative suit involving Cascal that would have put Sembcorp on notice that Cascal could potentially be liable for attorneys' fees. The basis for the alleged fee liability is this suit, which was brought *after* Sembcorp priced its tender offer, not before,[3] and which does not include Cascal as a party. The Court does not find it equitable to burden Sembcorp with anticipating that Cascal would become liable for a fee award as a result of a lawsuit that, at the time of Sembcorp's tender offer, did not exist and that never involved Cascal as a party.

Finally, Stevens submits that denying his fee request "would unfairly result in no fee award[] for achieving a substantial benefit." (Pl.'s Reply at 8.) To be sure, the common-benefit rule is concerned with fairness. But its concern is the specific inequity that results when a lawsuit's beneficiaries do not bear the suit's costs. Charging fees to Sembcorp—which received no benefit from this suit and which could not have reasonably foreseen that it was acquiring a liability for fees when it made its tender offer for Cascal—does not remedy that inequity. Because a fee award against Sembcorp would not serve the common-benefit rule's purpose of spreading costs among the persons supposedly benefitting from this lawsuit, Sembcorp is not liable for Stevens's attorneys' fees.

---

[3] Of course, Stevens's claim that Sembcorp omitted material information from its tender offer necessitated that his suit follow the tender offer.

### B. Sembcorp is not entitled to attorneys' fees pursuant to Rule 11

Sembcorp has cross-moved for an award of the attorneys' fees it expended in moving to dismiss Stevens's amended complaint. Because the Private Securities Litigation Reform Act applies here, if a pleading substantially fails to comply with Federal Rule of Civil Procedure 11(b), there is presumption in favor of a reasonable attorneys' fees award to the opposing party. *See* 15 U.S.C. § 77z-1(c)(3)(A)(ii). Rule 11(b) generally requires a pleading to have a nonfrivolous basis in law and fact and a valid litigation purpose in order not to be subject to sanction. Sembcorp argues that the amended complaint violated Rule 11(b) because it "was moot before it was filed." (Def.'s Opp. to Mot. for Attorneys' Fees at 14.)

The Court disagrees. The release of certain documents mooted the primary concerns of Stevens's original complaint. But those disclosures did not address the claims asserted in the amended complaint, which alleged omissions in connection with the description of Sembcorp's efforts to purchase Cascal. (*See* Am. Compl. ¶¶ 88-112.) Sembcorp does not argue that these Section 14(e) claims were so "patently" meritless as to render the amended complaint sanctionable, and the Court does not find them to be so. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993). Accordingly, Sembcorp is not entitled to its attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, the parties' motions for attorneys' fees are both denied.

Dated: New York, New York
August 1, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.